**PATTERSON BELKNAP WEBB & TYLER LLP**
STEVEN A. ZALESIN (*pro hac vice*)
sazalesin@pbwt.com
JANE METCALF (*pro hac vice*)
jmetcalf@pbwt.com
1133 Avenue of the Americas
New York, New York 10036
Telephone (212) 336-2110
Facsimile (212) 336-2111

**LAFAYETTE & KUMAGAI LLP**
GARY T. LAFAYETTE (SBN 88666)
glafayette@lkclaw.com
BRIAN H. CHUN (SBN 215417)
bchun@lkclaw.com
1300 Clay Street, Ste. 810
Oakland, California  94612
Telephone  (415) 357-4600
Facsimile  (415) 357-4605

**THE CLOROX COMPANY**
MARK W. DANIS (SBN 147948)
mark.danis@clorox.com
1221 Broadway
Oakland, California  94612

*Attorneys for Plaintiff The Clorox Company*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CLOROX COMPANY,<br><br>                              Plaintiff,<br><br>      vs.<br><br>RECKITT BENCKISER LLC,<br><br>                              Defendant. | Case No. 19-cv-01452-EMC<br><br><br>**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM**<br><br>Hearing Date:  June 20, 2019<br>Time:  1:30 p.m.<br>Courtroom:  5<br>Judge:  Honorable Edward M. Chen |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ......................................................................................................................2

    A.    Reckitt's False and Misleading Lysol Daily Cleanser Commercials............................2

    B.    Reckitt's False and Misleading Comparisons to Clorox Disinfecting Wipes...............5

    C.    Reckitt's Non-Comparative Ads for Lysol Spray and Wipes.......................................7

    D.    Reckitt's False and Misleading Wipe Strength Comparisons.......................................7

    E.    Reckitt's False and Misleading Toilet Cleaner Commercials.......................................8

    F.    Injury to Clorox .........................................................................................................10

ARGUMENT ........................................................................................................................11

I.    Clorox Has Adequately Alleged Consumer Deception ..........................................12

    A.    Literal Falsity .............................................................................................................12

    B.    Implied Falsity ...........................................................................................................14

    C.    The Complaint Adequately Alleges Why Each Ad Is False or Misleading ...............15

        1.    Reckitt's Ads Comparing Clorox Clean-Up to Lysol Daily Cleanser............15

        2.    Reckitt's Attacks on Clorox Disinfecting Wipes............................................18

        3.    Reckitt's Wipe-Strength Comparisons ...........................................................19

        4.    Reckitt's Toilet Bowl Cleaner Comparisons ..................................................20

II.    Clorox Has Adequately Alleged Materiality and Injury..........................................21

    A.    Materiality..................................................................................................................21

    B.    Injury.........................................................................................................................22

III.   The Complaint States a Claim Under California's Unfair Competition Law and False Advertising Law.........................................................................................................23

    A.    Clorox Has Standing Under the UCL and FAL.........................................................23

    B.    Clorox Has Alleged that Reasonable Consumers Are Deceived by Reckitt's Ads ............................................................................................................................24

IV.   The Complaint States a Claim Against Reckitt Benckiser LLC................................24

CONCLUSION......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*23andMe, Inc. v. Ancestry.com DNA, LLC*,
    356 F. Supp. 3d 889 (N.D. Cal. 2018) ............................................................................20, 23, 24

*Am. Specialty Health Grp., Inc. v. Healthways, Inc.*,
    2012 U.S. Dist. LEXIS 147522 (S.D. Cal. Oct. 12, 2012) ........................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................................11

*Aussie Nads U.S. Corp. v. S*ivan,
    41 F. App'x 977 (9th Cir. 2002) ...............................................................................................13

*Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*,
    2009 U.S. Dist. LEXIS 2667 (N.D. Cal. Jan. 7, 2009) ..............................................................15

*Bellsouth Telcoms., Inc. v. Hawk Communs., LLC*,
    2004 U.S. Dist. LEXIS 9413 (N.D. Ga. Apr. 12, 2004) ............................................................20

*Cannarella v. Volvo Car United States LLC*,
    2016 U.S. Dist. LEXIS 192449 (C.D. Cal. Dec. 12, 2016) ........................................................21

*Castrol, Inc. v. Quaker State Corp.*,
    977 F.2d 57 (2d Cir. 1992)........................................................................................................17

*Clorox Co. v. Proctor & Gamble Commercial Co.*,
    228 F.3d 24 (1st Cir. 2000)..................................................................................................13, 14

*Coca-Cola Co. v. Tropicana Prods.*,
    690 F.2d 312 (2d Cir. 1982).......................................................................................................13

*Coe v. Gen. Mills*,
    2016 U.S. Dist. LEXIS 105769 (N.D. Cal. Aug. 10, 2016).........................................................24

*Cottrell, Ltd. v. Biotrol Int'l, Inc.*,
    191 F.3d 1248 (10th Cir. 1999) .................................................................................................14

*Denbicare U.S.A., Inc. v. Toys "R" Us, Inc.*,
    84 F.3d 1143 (9th Cir. 1996) .....................................................................................................11

*Ferrington v. McAfee, Inc.*,
    2010 U.S. Dist. LEXIS 106600 (N.D. Cal. Oct. 5, 2010)...........................................................14

*Franklin Fueling Sys. v. Veeder-Root Co.*,
    2009 U.S. Dist. LEXIS 72953 (E.D. Cal. Aug. 11, 2009) ..........................................................23

*Greenberg v. Johnson*,
    2015 U.S. Dist. LEXIS 187010 (C.D. Cal. Jan. 13, 2015) ................................................11, 14, 16

*Hansen Bev. Co. v. Innovation Ventures, LLC*,
    2009 U.S. Dist. LEXIS 127605 (S.D. Cal. Dec. 22, 2009)..........................................................11

*Helping Hand Tools v. EPA*,
    836 F.3d 999 (9th Cir. 2016) ......................................................................................................17

*Instant Checkmate, Inc. v. Background Alert, Inc.*,
    2014 U.S. Dist. LEXIS 190115 (S.D. Cal. Dec. 4, 2014)......................................................14, 15

*JHP Pharms., LLC v. Hospira, Inc.*,
    52 F. Supp. 3d 992 (C.D. Cal. 2014) ..........................................................................................15

*Johns v. Bayer Corp.*,
    2010 U.S. Dist. LEXIS 62804 (S.D. Cal. June 24, 2010)............................................................21

*JST Distrib., LLC v. CNV.com, Inc.*,
    2018 U.S. Dist. LEXIS 222222, at *12-13 (C.D. Cal. Mar. 7, 2018)..........................................21

*K&N Eng'g, Inc. v. Spectre Performance*,
    2011 U.S. Dist. LEXIS 107681 (C.D. Cal. Sep. 20, 2011)..........................................................13

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*,
    2014 U.S. Dist. LEXIS 53775 (N.D. Cal. Apr. 17, 2014) ............................................................21

*Kwikset Corp. v. Super. Ct.*,
    120 Cal. Rptr. 3d 741 (2011) ......................................................................................................23

*Language Line Services v. Language Services, LLC*,
    2011 U.S. Dist. LEXIS 124836 (N.D. Cal. Oct. 13, 2011)..........................................................15

*Law Offices of Mathew Higbee v. Expungement Assistance Servs.*,
    214 Cal. App. 4th 544 (2013) ......................................................................................................24

*United States ex rel. Lee v. Corinthian Colls.*,
    655 F.3d 984 (9th Cir. 2011) ......................................................................................................11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014).....................................................................................................................23

*Long v. Graco Children's Products*,
    2013 U.S. Dist. LEXIS 121227 (N.D. Cal. Aug. 26, 2013)..........................................................25

*Merisant Co. v. McNeil Nutritionals, LLC*,
    515 F. Supp. 2d 509 (E.D. Pa. 2007) ..........................................................................................14

*Moore v. Kayport Package Express*,
    885 F.2d 531 (9th Cir. 1989) ......................................................................................................19

*Mullins v. Premier Nutrition Corp.*,
  178 F. Supp. 3d 867, 892 (N.D. Cal. 2016) ...................................................................21

*Newcal Indus. v. Ikon Office Sol.*,
  513 F.3d 1038 (9th Cir. 2008) ..................................................................................11, 14

*Novation Ventures, LLC v. J.G. Wentworth Co.*,
  2015 U.S. Dist. LEXIS 188001 (C.D. Cal. Sep. 21, 2015).........................................15

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
  2016 U.S. Dist. LEXIS 150713 (N.D. Cal. Oct. 28, 2016).........................................22

*Oracle Am., Inc. v. TERiX Comput. Co.*,
  2014 U.S. Dist. LEXIS 561 (N.D. Cal. Jan. 3, 2014) .................................................14

*In re Packaged Seafood Prods. Antitrust Litig.*,
  242 F. Supp. 3d 1033, 1059 (S.D. Cal. 2017).............................................................25

*Pecanha v. Hain Celestial Grp.*,
  2018 U.S. Dist. LEXIS 11739 (N.D. Cal. Jan. 24, 2018) ...........................................24

*Powell v. Residential Mortg. Capital*,
  2010 U.S. Dist. LEXIS 59698 (N.D. Cal. May 24, 2010) ...........................................25

*Pulaski & Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) .......................................................................................23

*Quidel Corp. v. Siemens Med. Sols. USA, Inc.*,
  2017 U.S. Dist. LEXIS 171757 (S.D. Cal. Oct. 16, 2017) .........................................22

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) .............................................................................. *passim*

*Stiles v. Wal-Mart Stores, Inc.*,
  2015 U.S. Dist. LEXIS 117324 (E.D. Cal. Sep. 2, 2015)...........................................15

*Harper House, Inc. v. Thomas Nelson, Inc.*,
  889 F.2d 197, 209 n.8 (9th Cir. 1989) ........................................................................23

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  497 F.3d 144 (2d Cir. 2007).........................................................................................13

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) .................................................................................................24

*In re Tracht Gut, LLC*,
  836 F.3d 1146 (9th Cir. 2016) .....................................................................................11

*TrafficSchool.com, Inc. v. Edriver, Inc.*,
  653 F.3d 820 (9th Cir. 2011) .......................................................................................23

*U-Haul Int'l, Inc. v. Jartran, Inc.*,
  793 F.2d 1034 (9th Cir. 1986) ...........................................................................22

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ...........................................................................11

*Water, Inc. v. Everpure*,
  2011 WL 13176096 (C.D. Cal. Aug 23, 2011)....................................................15

*WIKA Instrument I, LP v. Ashcroft, Inc.*,
  2013 U.S. Dist. LEXIS 202010 (N.D. Ga. July 3, 2013)............................................22

*William H. Morris Co. v. Grp. W, Inc.*,
  66 F.3d 255 (9th Cir. 1995) ...........................................................................12, 16

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ...........................................................................21, 24

*Won Kyung Hwang v. Ohso Clean, Inc.*,
  2013 U.S. Dist. LEXIS 54002 (N.D. Cal. Apr. 16, 2013) .........................................22

*Wool v. Tandem Computs., Inc.*,
  818 F.2d 1433 (9th Cir. 1987) ...........................................................................19

*Youngevity Int'l v. Smith*,
  2018 U.S. Dist. LEXIS 144629 (S.D. Cal. Aug. 23, 2018) .......................................24

**Statutes**

7 U.S.C. § 136a ...........................................................................17

15 U.S.C. § 1125(a) ...........................................................................12, 22

Cal. Bus. Prof. Code § 17200 ...........................................................................12, 23, 24

Cal. Bus. Prof. Code § 17500 ...........................................................................12

**Other Authorities**

Fed. R. Civ. P. 8(a) ...........................................................................11, 20

Fed. R. Civ. P. 9(b) ...........................................................................11, 19, 20

Fed. R. Civ. P. 12(b)(6)...........................................................................11

Plaintiff The Clorox Company ("Clorox") respectfully submits this Memorandum in opposition to the motion by Defendant Reckitt Benckiser LLC ("Reckitt") to dismiss the Complaint.[1]

## PRELIMINARY STATEMENT

For the past year, Reckitt has engaged in a broad false-advertising campaign designed to destroy consumer trust in Clorox® products. Reckitt is a consumer goods conglomerate that produces and sells Lysol® brand household cleaning, sanitizing, and disinfecting products. Reckitt competes directly with Clorox, which sells products of the same type under its world-famous Clorox brand.

Reckitt's advertisements peddle a variety of falsehoods, targeting multiple Clorox products across several categories. One ad tells consumers that using Clorox's top multi-purpose spray cleaner in their kitchens will contaminate their food with a "harsh chemical residue," while Lysol products will not. Another advertisement claims that Clorox Disinfecting Wipes are too flimsy to withstand sustained use, and boasts of Lysol wipes' allegedly superior "strength." A number of ads purport to reveal deficiencies of Clorox products by comparing them unfavorably with Lysol products—but stack the deck in Lysol's favor by comparing mismatched products. These "apples-to-oranges" comparisons create the impression that Lysol products, as a general rule, are superior to their Clorox counterparts when, in fact, they are not.

Clorox's Complaint describes in detail how each of Reckitt's advertisements has deceived consumers, in violation of the Lanham Act and California's Unfair Competition and False Advertising Laws. Some ads state express falsehoods, such as the claim that Reckitt's chlorine-based spray cleaner leaves no chemical residue. Others achieve their deceptive purpose through a combination of words and images, which depict Clorox products turning food inedible or disintegrating under pressure. As Clorox's Complaint also alleges, Reckitt's ads influence consumers' purchasing decisions, and have damaged Clorox's goodwill and business, diverting sales that Clorox otherwise would have made. These allegations are more than sufficient to state claims

---

[1] Clorox has filed a notice of voluntary dismissal as to Reckitt Benckiser Group PLC, the other defendant named in the Complaint.

11081108v.1

for false advertising and unfair competition under federal and California law.

Reckitt's motion to dismiss, like its ad campaign, relies on bogus taglines and half-truths. Reckitt argues that, in order to be "literally false," an ad must "expressly state" a deceptive message, despite settled law that such a message may also be conveyed by "necessary implication."  In a similar vein, Reckitt takes Clorox to task for failing to identify the "consumers" who "actually have" been deceived by its misleading ads.  Yet courts are unanimous in holding that, in a case of implied falsity, evidence of actual deception is not necessary at the pleading stage.

Reckitt's arguments concerning materiality and injury fare no better, and read more like a summary judgment motion than a motion to dismiss.  Reckitt asserts that a false-advertising complaint must precisely quantify the damages suffered as result of the deceptive ads.  That is contrary to controlling authority, which holds that general allegations of lost sales and damage to goodwill are sufficient.  And misstating a decision by this Court, Reckitt insists that competitors can never bring a claim under California's Unfair Competition Law unless they themselves have relied on the false representations.  This Court held precisely the opposite.

Reckitt's motion raises no colorable basis to dismiss Clorox's highly particularized pleading. It should be denied out of hand.

## BACKGROUND[2]

Each year, American consumers spend more than $7 billion on household cleaning and disinfecting products.  (Compl. ¶ 25.)  Clorox and Reckitt are leading sellers of these products under their respective trademarks, Clorox and Lysol.  (*Id.* ¶ 2.)  In order to capture a greater share of the market, Reckitt has engaged in an advertising campaign designed to mislead consumers and erode consumer confidence in the Clorox brand.  These ads have been aired tens of thousands of times on national television and viewed by millions of consumers online.  (*E.g.*, *id.* ¶¶ 37, 62, 78.)

### A.   Reckitt's False and Misleading Lysol Daily Cleanser Commercials

In a series of television and online ads, Reckitt has made the false claim that its Lysol Daily Cleanser ("LDC") is superior to Clorox's intensive multi-purpose spray cleaner, Clorox Clean-Up

---

[2] The facts set forth herein are drawn entirely from the Complaint and accompanying exhibits.

Cleaner + Bleach ("CCU").  CCU is a cleaning and disinfecting spray designed for deep-cleaning, and it is approved by the U.S. Environmental Protection Agency ("EPA") for use on kitchen and other household surfaces.  CCU, which has been on the market for more than 25 years, is also EPA approved to disinfect against 55 different germs in as little as 30 seconds.  Its disinfecting ingredient is sodium hypochlorite, also known as bleach, which accounts for 1.84% of the product solution.  (*Id.* ¶ 28.)  CCU also contains a detergent that breaks down grease and dirt stains.  (*Id.* ¶ 52.)

Reckitt also markets intensive spray cleaners/disinfectants, such as Lysol Multi-Purpose Cleaner with Bleach, which is formulated with 2.0% bleach.  (*Id.* ¶ 32.)  LDC, however, is a different type of product.  Launched in 2018, LDC is a light-duty or "daily" product that is less efficacious than CCU.  Although LDC is formulated with hypochlorous acid, a form of bleach, that ingredient accounts for just .017 % of the product solution.  As a result, LDC must be left on any surface for a full ***10 minutes***, as opposed to just 30 seconds for CCU, to achieve disinfection.  Even then, LDC is EPA approved to disinfect against just 16 germs.  (*Id.* ¶ 34.)  LDC also lacks a detergent ingredient capable of breaking down stains.  (*Id.* ¶ 52.)

Despite these differences, Reckitt's television campaign pits the two products head-to-head in a so-called "bleach indicator test" for "harsh chemical residue."  (*Id.* ¶¶ 36-42, Ex. 2.)  The commercial depicts two cutting boards, positioned side by side.  The announcer explains that "we used Clorox Clean-Up on one side and Lysol Daily Cleanser on the other."  Two apple slices are then rubbed against both surfaces, and a "bleach indicator test" is applied with a medicine dropper.  (*Id.* Ex. 2.)  Only the apple slice rubbed on the CCU-treated surface activates the assay, turning the apple brown:



---

Four individuals, identified by on-screen text as "REAL PEOPLE, NOT ACTORS," then appear to observe the results of the "test."  All recoil at the sight of the brown "Clorox" apple slice. One remarks that "***I wouldn't even want to touch this***."  Another agrees, "What do you do with that? Like, ***who's going to eat that***?"  And a third gazes in the camera in silent disbelief.

  

(*Id.* ¶ 40, Ex. 2.)[3]

Reckitt's social media ads follow a similar formula.  In one ad, LDC sprays away an image of CCU and its list of ingredients.  (*Id.* ¶ 49.)  Another ad juxtaposes the safety warnings for LDC and CCU.  (*Id.* ¶ 54.)  Both online advertisements end by claiming that LDC contains "Only 3 ingredients," "Kills 99.9% of germs," and has "No harsh chemical residue."

  

These ads are false and misleading.  They convey that LDC and CCU are comparable products, but for CCU leaving "harsh chemical residue"—even though, as detailed above, the products serve different needs, and LDC's cleaning and disinfecting capabilities are considerably

---

[3] Reckitt has also posted an alternative version of this commercial to its YouTube channel.  In that ad, "real people" apply a so-called "bleach indicator test" to food preparation surfaces that have just been treated with CCU or LDC.  When the former product activates the test but the latter does not, the consumers indicate that they prefer LDC.  (*See id.* ¶ 43.)

4

more limited.  They represent that LDC, unlike CCU, leaves no "harsh chemical residue"—even though its active ingredient is no gentler than the bleach in CCU and also leaves a residue.  And they communicate that CCU is unsuitable or unsafe for use in kitchens—even though EPA, which regulates all disinfecting products and approves them for identified uses, has repeatedly approved CCU for that purpose.  (*Id.* ¶¶ 44-47.)

**B.      Reckitt's False and Misleading Comparisons to Clorox Disinfecting Wipes**

Another component of Reckitt's anti-Clorox campaign takes aim at Clorox Disinfecting Wipes, which are pre-moistened, anti-microbial wipes.  These ads portray Clorox's ***wipes*** as less efficacious than their Lysol counterparts.  In reality, however, all of the efficacy comparisons are between Clorox Disinfecting Wipes and Lysol Disinfectant ***Spray***, a different product in a separate category.  The ads acknowledge this only fleetingly, leaving consumers with the impression that "Lysol" disinfecting products are more effective than their "Clorox" counterparts.

For example, in its aptly titled "Fake It" commercial, Reckitt shows a split screen with blue and green "germs" littered across a white background.  On the left side is the famous Clorox chevron, and on the right side the Lysol logo.  As the ad progresses, the germs on the Lysol side of the screen disappear, while those on the Clorox side remain.  In place of the germs, the Lysol screen displays the statement, "KILLS THE #1 CAUSE OF THE COLD." [4]



As these images appear, an announcer proclaims that "Lysol Disinfectant Spray kills the number one

---

[4] After the commercial had been running for months and seen by millions of consumers, in response to a protest by Clorox, Reckitt revised the side-by-side images to include—in minuscule type— "Disinfecting Wipes" under "Clorox" and "Disinfectant Spray" under "Lysol."  (*Id.* ¶ 69.)

1   cause of the cold and Clorox Wipes don't."  (Compl. ¶¶ 62-68.)

2       Reckitt's online advertisements take the same approach, comparing the cold-killing ability of

3   Lysol Disinfectant Spray (and the Lysol brand generally) against Clorox Disinfecting Wipes.  The

4   "Game Over" ad, for example, portrays a videogame-like scene in which Reckitt's spray eliminates

5   the "cause of the cold" while Clorox Disinfecting Wipes fail.  (*Id.* ¶¶ 72-73.)



13      Another Reckitt ad called "Spray Away" opens with an image of Lysol Disinfectant Spray

14  and the unqualified statement "LYSOL KILLS THE #1 CAUSE OF COLDS."  The next screen

15  shows the Lysol product spraying Clorox Disinfecting Wipes off the screen.  (*Id.* ¶¶ 74-76.)



24      These ads leave consumers with an unmistakable false impression.  Through its use of a

25  mismatched, "apples-to-oranges" product comparison and generic references to "Lysol" and

26  "Clorox," the ads convey that Lysol products in general are more effective at eliminating germs—

27  including a virus that causes the common cold (rhinovirus)—than Clorox products.  That is false.

Clorox products are at least as effective as antimicrobials as their Lysol counterparts.  Contrary to the ads' message, Clorox Disinfecting Wipes are EPA approved to eradicate more illness-causing germs than Lysol Disinfecting Wipes, and the Lysol wipes are ***not*** approved to eradicate rhinovirus. Moreover, although Lysol Disinfectant ***Spray*** is approved to eradicate rhinovirus, so are many Clorox products, including Clorox 4-in-One Disinfecting Spray.  (*Id.* ¶¶ 70-71.)

**C.     Reckitt's Non-Comparative Ads for Lysol Spray and Wipes**

In addition to denigrating Clorox wipes, Reckitt has represented that its own disinfecting spray and wipes products have equivalent efficacy when, in fact, they do not.  For example, in an online ad, Reckitt starts with a child sneezing at school, and then shows Lysol Disinfectant Spray, along with the claim that it "kills over 100 illness causing germs."  In the final scene of the commercial, Lysol Disinfecting ***Wipes*** are depicted alongside Lysol Disinfectant Spray, along with the tag line "WHAT IT TAKES TO PROTECT."  (*Id.* ¶¶ 77-80.)[5]

  

By showing both Lysol products in this fashion, Reckitt's ads send the clear message that both Lysol spray and Lysol wipes "kill over 100 illness causing germs"—a claim that is flatly false as to Lysol wipes.  Even a consumer who managed to read the nearly invisible disclaimer would likely not realize that the "kills over 100 illness causing germs" claim is true only to Lysol Disinfectant Spray, but false as to Lysol Disinfecting Wipes.  (*Id.* ¶ 82.)

**D.     Reckitt's False and Misleading Wipe Strength Comparisons**

In yet another nationally televised ad, Reckitt impugns the "strength" of Clorox Disinfecting

---

[5] Another online ad follows the same basic pattern.  (*Id.* ¶¶ 80-81.)

1   Wipes, representing that they are prone to tearing during use.  This commercial shows people in a

2   gym putting cleaning wipes to a "strength test" by using them to pick up 30-pound kettlebell

3   weights.  The Clorox wipe immediately rips, while the Lysol wipe holds the weight for several

4   seconds.  A minuscule disclaimer cautions:  "Dramatization.  Based on lab results.  Supervised

5   demonstration.  Do not attempt."  (*Id.* ¶¶ 83-86.)[6]

6

7

8                              

9

10

11

12

13

14        The unmistakable message of this advertisement is that Lysol Disinfecting Wipes are of

15   higher quality, are more durable, and are more resistant to tearing during use than Clorox

16   Disinfecting Wipes.  That claim is false.  Clorox's rigorous testing has established the ability of

17   Clorox Disinfecting Wipes to withstand consumer use of sufficient duration to exhaust the

18   antibacterial solution on the products.  In other words, a Clorox Disinfecting Wipe is highly unlikely

19   to rip during actual use.  (*Id.* ¶ 91.)  Reckitt's assertion that Lysol Disinfecting Wipes offer superior

20   tearing resistance is therefore false.  Moreover, the ad's strength-test "dramatization" is a fiction:

21   neither product is actually long enough to serve as a "handle" when holding a kettlebell.  (*Id.* ¶ 92.)

22        **E.    Reckitt's False and Misleading Toilet Cleaner Commercials**

23        Reckitt has also run ads that falsely claim that its product, Lysol Power Toilet Bowl Cleaner,

24   is "10 times more effective" than Clorox Toilet Bowl Cleaner.  In fact, Reckitt's toilet bowl cleaners

25   are no more effective than Clorox's.  Reckitt once against suggests otherwise only through a

26

27   [6] Reckitt has also run a variation of this commercial that depicts the same strength test.  (*Id.* ¶¶ 87-
    88.)  In addition, Reckitt has disseminated via Facebook the claim that "LYSOL WIPES ARE
28   STRONGER THAN COMPETITION."  (*Id.* ¶ 89, Ex. 5.)

1  misleading apples-to-oranges comparison.

2  Most toilet bowl cleaners are either acid-based or bleach-based. (*Id.* ¶ 103.) Acid-based

3  cleaners, such as Lysol Power Toilet Bowl Cleaner, are more effective against mineral-based

4  deposits, including rust and limescale. Bleach-based cleaners, such as Clorox Toilet Bowl Cleaner,

5  are more effective at removing organic stains, including mildew and mold. For that reason, Clorox

6  and Reckitt offer products in both categories. (*Id.*)

7  Reckitt's ads in this category use mismatched comparisons to support the false claim that

8  Lysol Power Toilet Bowl Cleaner enjoys an unqualified performance advantage over a comparable

9  Clorox product. In a television commercial, Reckitt depicts a woman squirting Lysol Power Toilet

10  Bowl Cleaner into a toilet and watching as it instantly becomes clean, without the use of a brush.

11  The ad then purports to depict the results of a side-by-side efficacy test comparing Lysol Power

12  Toilet Bowl Cleaner and Clorox Regular Liquid Bleach (rather than a Clorox toilet cleaning

13  product). The "results" show the Lysol product leaving a surface immaculate, while the Clorox

14  product leaves it stained and soiled. A large banner reads: "10X MORE CLEANING POWER

15  THAN CLOROX." (*Id.* ¶¶ 96-97.)



16

17

18

19

20

21

22

23  In tiny print, a disclaimer reveals that the test evaluated the two products' efficacy (1) on "limescale

24  and rust stains" only, as opposed to the full range of deposits found in toilet bowls; and (2) "after

25  contact with the product for 10 minutes, followed by rinsing." (*Id.* ¶ 98)[7]

26  _____

27  [7] A similar ad presents the same misleading comparative test results, and claim of "10X More Cleaning Power," against a Clorox toilet cleaning product that Reckitt does not properly identify. In

28  that commercial, the voice-over initially proclaims that "Clorox Toilet Bowl Cleaner with Bleach is no match against limescale," over side-by-side images of "Clorox" failing to clear limescale buildup

Reckitt's "10X more cleaning power than Clorox" claim is false. As the ad's disclaimer concedes, the Lysol product's advantage relates *only* to rust and limescale and not to organic matter (where it performs worse). Yet Reckitt makes the "10X More Cleaning Power" claim without qualification. And even as to rust and limescale, the claim that Lysol Power Toilet Bowl Cleaner has "10X More Cleaning Power than **Clorox**," full stop, is false. For example, Lysol Power Toilet Bowl Cleaner has no such advantage over Clorox Toilet Bowl Cleaner-Tough Stain Remover, whose active ingredient (glycolic acid) specifically targets stains of this type. Finally, the ad misrepresents the efficacy of Lysol Power Toilet Bowl Cleaner. Through its depiction of a woman using a single squirt to render her toilet immediately spotless, the ad conveys that the Lysol product removes all stains within seconds. In fact, the product requires at least 10 minutes to remove *some* toilet bowl stains. (*Id.* ¶¶ 102-107.)

### F.   Injury to Clorox

Reckitt's misleading advertisements are designed to influence consumers' purchasing decisions and to harm Clorox. Each ad conveys that Clorox's products are unsafe to use, ineffective, or incapable of withstanding stress. Consumers "rely on information" in Reckitt's misleading "advertisements to make educated purchasing decisions." (*Id.* ¶ 113.) As a result, the Complaint explains, "the challenged advertising sows doubts in consumers' minds about the efficacy and safety of Clorox products as household cleaning and disinfecting agents." (*Id.* ¶ 110.) The ads have the "purpose and effect of deceiving consumers and inducing them to purchase Lysol products based on misinformation." (*Id.* ¶ 113.)

The Complaint further alleges that, by falsely disparaging multiple Clorox offerings, Reckitt's ads "erode Clorox's hard-earned reputation among consumers as a manufacturer of effective, user-friendly products." (*Id.* ¶ 9.) In addition to harming Clorox's reputation and goodwill, Reckitt's "advertising has diverted to Reckitt sales that Clorox otherwise would have made" and "prevented Clorox from earning profits" that it "otherwise would have earned." (*Id.* ¶ 111.)

---

while "Lysol" wipes it out completely. A large, red "10X" banner flashes across the screen. (Compl. ¶ 100, Ex. 7.)

**ARGUMENT**

To withstand dismissal under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard "is not akin to a probability requirement." *Id.* On the contrary, the "trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

Here, Clorox's Complaint sets forth ample "factual matter" that supports each element of its claims for false advertising under federal and state law: (1) that Reckitt has made one or more "false statement[s]" in its advertising; (2) that the statements "actually deceive[]" or have "the tendency to deceive" consumers; (3) that the statements are material, *i.e.*, "likely to influence the purchasing decision[s]" of consumers; (4) that the statements have been used in interstate commerce; and (5) that Clorox "has been or is likely to be injured." *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1052 (9th Cir. 2008) (Lanham Act); *see also Denbicare U.S.A., Inc. v. Toys "R" Us, Inc.*, 84 F.3d 1143, 1152 (9th Cir. 1996) (UCL and FAL). Clorox has therefore discharged its burden of stating a "claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

Contrary to Reckitt's contentions, Rule 9(b), which governs claims for fraud and requires "the circumstances of fraud [to] be stated with particularity," has no applicability here. *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011). Rule 9(b) governs only if (1) fraud is "a necessary element of a claim," or if (2) the plaintiff "allege[s] a unified course of fraudulent conduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Claims that arise from multiple "categories of allegedly false or misleading representations, all relating to different underlying factual issues," as Clorox's does, are governed by the default pleading standards of Rule 8. *Hansen Bev. Co. v. Innovation Ventures, LLC*, 2009 U.S. Dist. LEXIS 127605, at *53-55 (S.D. Cal. Dec. 22, 2009). In any event, Clorox's Complaint easily satisfies Rule 9(b), which demands only that a complaint "articulate[] the content of the false advertising" and explain why it "is likely to mislead consumers." *Greenberg v. Johnson,* 2015 U.S. Dist. LEXIS 187010, at *10-12 (C.D. Cal. Jan. 13, 2015).

I.     **CLOROX HAS ADEQUATELY ALLEGED CONSUMER DECEPTION**

Both the Lanham Act and its California counterparts proscribe advertising that is "false *or misleading*." 15 U.S.C. § 1125(a)(1)(B) (emphasis added); *see also* Cal. Bus. Prof. Code § 17200 (prohibiting any "untrue or misleading" statement or "unfair, unlawful or fraudulent" business practice). "[I]nnuendo, indirect intimations, and ambiguous suggestions" are actionable under the statutes to the same degree as "blatant falsehoods." *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 257 (9th Cir. 1995). Accordingly, a plaintiff may state a claim for false advertising by alleging that an ad is (1) "literally false . . . on its face"; (2) "literally false . . . by necessary implication"; or (3) "literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Clorox has done so here, in spades.

A.     **Literal Falsity**

Clorox's Complaint is replete with allegations of Reckitt's "literally false" advertising. To cite just a few examples, Reckitt advertises that Lysol Daily Cleanser leaves "*no* harsh chemical residue," when in fact it is formulated with functionally the same "chemical" as Clorox Clean-Up. (Compl. ¶¶ 33, 45, 50.) Reckitt's ads claim that Lysol Disinfecting *Wipes* "kill over 100 illness causing germs," when in fact only Lysol Disinfectant *Spray* has that capability. (*Id.* ¶¶ 79-82.) Reckitt makes the unqualified claim that its acid-based Lysol Power Toilet Bowl Cleaner has "10x more cleaning power than Clorox," when in fact the Lysol product offers this purported advantage only as to mineral stains, not organic ones. Moreover, the claim communicates a comparison against Clorox's entire line of toilet bowl cleaners—including Clorox's equally efficacious acid-based toilet bowl cleaners—when in fact it applies only to Clorox's bleach-based products. (*Id.* ¶¶ 93-94, 102-07.) And so on: Clorox devotes more than 20 pages of its Complaint to describe Reckitt's ads and the false statements they contain.

Reckitt nonetheless argues that these detailed allegations do not set forth a claim for literal falsity because, in some instances, they do not point to an expressly false *statement*. For example, Reckitt denies that its advertising portrays CCU as "unsuitable or unsafe for use in kitchens" (*id.* ¶ 46), insisting that Clorox has "identifie[d] no such statement" in the ad. (Mot. at 6.) On the contrary, Reckitt asserts, the ad merely says that CCU leaves a "harsh chemical residue" and

1   nowhere states that it is "unsafe."  (*Id.* at 5-6.)

2        Reckitt misapprehends the law.  An ad need not contain an explicitly false verbal **statement**

3   in order to be deemed "literally false."  When determining "whether an advertising claim is literally

4   false, the claim must always be analyzed in its full context."  *Southland Sod*, 108 F.3d at 1139.

5   Images, as well as words, can convey a literal falsehood.  *E.g.*, *Coca-Cola Co. v. Tropicana Prods.*,

6   690 F.2d 312, 318 (2d Cir. 1982).  Moreover, even if its express claims are true, an ad can be

7   literally false by "necessary implication" if "the words or images, considered in context, necessarily

8   and unambiguously imply a false message."  *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d

9   144, 158 (2d Cir. 2007).  Put differently, an advertisement is literally false whenever, viewed in its

10  entirety, "the audience would recognize the [false] claim as readily as if it had been explicitly

11  stated."  *Aussie Nads U.S. Corp. v. Sivan*, 41 F. App'x 977, 977 (9th Cir. 2002).

12       Here, Clorox has alleged ample facts to support its contention that Reckitt's bleach indicator

13  test ad "necessarily and unambiguously" makes a false claim about the safety of CCU.  In addition to

14  condemn CCU's "harsh chemical residue," the commercial depicts several "real people" wincing

15  at the sight of its purported effect on food, and reacting with exclamations such as "I wouldn't even

16  want to touch this" or "Who's going to eat that?"  (Compl. Ex. 2.)  This is an obvious attack on the

17  product's safety or suitability for use around food, and is sufficient to establish that the commercial

18  is literally false by necessary implication.  *Time Warner Cable*, 497 F.3d at 148.

19       Contrary to Reckitt's assertion, Clorox is not required to adduce **proof** of literal falsity at this

20  stage.  The determination of an ad's literal falsity implicates "two factual questions":  (1) what claim

21  was "conveyed by the advertisement" and (2) "whether that claim is false."  *Clorox Co. v. Proctor &*

22  *Gamble Commercial Co.*, 228 F.3d 24, 34 (1st Cir. 2000); *see also K&N Eng'g, Inc. v. Spectre*

23  *Performance*, 2011 U.S. Dist. LEXIS 107681, at *36 (C.D. Cal. Sep. 20, 2011) ("Literal falsity is

24  question of fact.").  Accordingly, at the pleading stage, courts "are not required to determine what

25  claim was actually conveyed."  *Clorox*, 228 F.3d at 35.  Instead, the relevant question is whether

26  "the complaint, as supplemented by the advertising copy, alleges facts" that plausibly show the ads

27  are false "explicitly or by necessary implication."  *Id.*  As set forth in greater detail below, Clorox

28  has met this requirement with respect to virtually all of the disputed ads.

**B.     Implied Falsity**

In the alternative, Clorox's allegations are sufficient to establish that each challenged ad is impliedly false, *i.e.*, "literally true but likely to mislead or confuse consumers." *Southland Sod*, 108 F.3d at 1139.  Though Reckitt tries to suggest otherwise, a plaintiff pursuing a claim for implied falsity need ***not*** show that the deceptive message is the sole (or even the most natural) interpretation of the ad.  Rather, it is sufficient that a not insubstantial segment of the viewing audience receives the false message alleged.  *Id.*; *see also Merisant Co. v. McNeil Nutritionals, LLC*, 515 F. Supp. 2d 509, 526 (E.D. Pa. 2007) (deception of "15% [of consumers] is almost always deemed sufficient" to establish implied falsity).  For this reason, Reckitt's contention that each of the challenged ads is susceptible to a non-misleading interpretation, even if true, does not defeat a claim of implied falsity.

Moreover, Clorox's burden at this stage is to credibly allege, not to conclusively prove, that the ads are deceptive to a substantial number of consumers.  The question of whether an ad can ultimately be "proved true but misleading" is, like literal falsity, a "factual question." *Newcal Indus.*, 513 F.3d at 1053-54.  Indeed, "the Ninth Circuit has unequivocally held" that "the question of whether a particular statement is false and misleading is a question of fact that is ***inappropriate for adjudication on a motion to dismiss***." *Instant Checkmate, Inc. v. Background Alert, Inc.*, 2014 U.S. Dist. LEXIS 190115, at *12-17 (S.D. Cal. Dec. 4, 2014) (citing *Newcal*, 513 F.3d at 1053-54) (emphasis added).[8] So long as a complaint contains credible allegations "articulat[ing] the content of the false advertising" and explaining why it "is likely to mislead consumers," as Clorox's pleading does, it adequately states a claim for implied falsity. *Greenberg,* 2015 U.S. Dist. LEXIS 187010, at *10-12 (denying motion to dismiss claim of implied falsity); *see also Oracle Am., Inc. v. TERiX Comput. Co.*, 2014 U.S. Dist. LEXIS 561, at *34-37 (N.D. Cal. Jan. 3, 2014) (same when plaintiff "identified, and quoted, specific statements" and "explained in detail why the implication" was "misleading"); *Ferrington v. McAfee, Inc.*, 2010 U.S. Dist. LEXIS 106600, at *15-18 (N.D. Cal. Oct. 5, 2010) (same when plaintiff "painted a clear picture" as to how the "visual aspects of the ad" are

---

[8] Courts outside this Circuit routinely hold the same. *E.g.*, *Clorox*, 228 F.3d at 37 n.11 ("[W]e do not mean to suggest that a Lanham Act plaintiff must identify the particular consumer survey that will be used to support its allegations to survive a motion to dismiss."); *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252-54 (10th Cir. 1999) (similar).

"misleading"); *Instant Checkmate*, 2014 U.S. Dist. LEXIS 190115, at *12-14 (same when challenged ad "may be literally true," but "nevertheless mislead consumers").[9]

Reckitt's other main argument—that Clorox must allege specific instances of consumer deception—is likewise contrary to the settled law of this Circuit.   Although implied falsity is commonly **proven** through extrinsic evidence of deception, such as consumer surveys, a plaintiff at the "motion to dismiss stage" need not "produce[] actual evidence" of "consumer beliefs."   *JHP Pharms., LLC v. Hospira, Inc.*, 52 F. Supp. 3d 992, 1002-03 (C.D. Cal. 2014) (holding that the description of an ad, combined with the allegation that it deceived consumers, was sufficient to state a claim); *see also Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, 2009 U.S. Dist. LEXIS 2667, at *10-11 (N.D. Cal. Jan. 7, 2009) (rejecting the argument that "false advertising claim should be dismissed because it fails to aver evidence of actual or likely deception to purchasers," and finding the allegation that "customers . . . could be deceived" sufficient at pleading stage).   All that is necessary is a credible allegation that the ad conveys a misleading message.

## C.     The Complaint Adequately Alleges Why Each Ad Is False or Misleading

Applying these standards, there can be no doubt that the Complaint sufficiently alleges literal falsity, falsity by necessary implication, or implied falsity as to each disputed ad.

### 1.     Reckitt's Ads Comparing Clorox Clean-Up to Lysol Daily Cleanser

Clorox amply alleges that the "Bleach Indicator Test" ad, which compares CCU to LDC, is literally, necessarily, and implicitly false.   **First**, the commercial conveys that LDC is a "substitute" for CCU, with "comparable" cleaning and germ-killing power.   (Compl. ¶ 44.)   It depicts "real people" enthusiastically choosing LDC over CCU based on the "bleach indicator test" results, and

---

[9] The few cases cited by Reckitt are not to the contrary. In *Stiles v. Wal-Mart Stores, Inc.*, 2015 U.S. Dist. LEXIS 117324 (E.D. Cal. Sep. 2, 2015), the court dismissed a pro se plaintiff's one-paragraph allegation of falsity.   *Id.* at *9.   In *Language Line Services v. Language Services, LLC*, 2011 U.S. Dist. LEXIS 124836 (N.D. Cal. Oct. 13, 2011), the plaintiff "conceded" the defendant's ads were "unambiguously factually true."   *Id.* at *39.   And in *Novation Ventures, LLC v. J.G. Wentworth Co.*, 2015 U.S. Dist. LEXIS 188001 (C.D. Cal. Sep. 21, 2015), "nothing in Plaintiff's allegations assert[ed] that Defendants made a false statement of fact."   *Id.* at *21.   Finally, in *Water, Inc. v. Everpure*, 2011 WL 13176096 (C.D. Cal. Aug 23, 2011), the plaintiff did not even allege that the defendant's ads were "literally true but misleading."   *Id.* *4-5.   The court nonetheless recognized that a plaintiff need only "*eventually* prove" that consumers were misled.   *Id.* (emphasis added).

declaring the former "clearly way better." (*Id.* Ex. 2.) It encourages consumers to eschew CCU, which "could be leaving harsh chemical residue behind," in favor of LDC, because the latter has "only three simple ingredients and leaves surfaces free from harsh chemical residue." (*Id.* ¶ 41.) These aspects of the ad, and others, communicate that LDC meets the same consumer needs as CCU with a "simpler" and less "harsh" formula.

As Clorox also alleges in detail, that message is false. To disinfect a surface, LDC must be left in place for *10 minutes*, whereas CCU requires only 30 seconds. Even then, LDC is EPA approved to disinfect against just 16 microorganisms, compared to CCU's 55. (*Id.* ¶¶ 33-34.) And unlike CCU, LDC lacks the ingredients necessary to break down dirt and grease. (*Id.* ¶ 52.) In reality, LDC is formulated to meet different consumer needs than those of CCU. (*Id.* ¶ 44.) Clorox's particularized averments concerning "the content of the false advertising" and the manner in which it "is likely to mislead consumers" credibly allege implied falsity. *Greenberg,* 2015 U.S. Dist. LEXIS 187010, at \*10-12.

Reckitt's arguments to the contrary are unavailing. The fact that the ad contains no "express statement" equating the products' efficacy is, as noted above, irrelevant. The Lanham Act is not limited to "express" falsehoods; it extends to ads that mislead by "innuendo, indirect intimations, and ambiguous suggestions." *William H. Morris Co.*, 66 F.3d at 257. And Reckitt's assertion that LDC *is* comparable to CCU, in that both products "are used for cleaning," is more a denial of Clorox's allegations than a challenge to their sufficiency. (Mot. 5.) It is for the factfinder to determine whether Reckitt's portrayal of the products as "comparable" is true or false in light of their respective characteristics, according to the proof at trial.

*Second*, the ad explicitly states that LDC leaves surfaces "free from harsh chemical residue," and depicts the LDC-treated surface as residue-free after use. (Compl. ¶ 41.) As alleged in Clorox's Complaint, this too is untrue. LDC is formulated with hypochlorous acid, a chlorine-based compound that is a form of bleach. (*Id.* ¶¶ 33, 53.) Unless LDC magically disappears on contact (which is unlikely, given that it takes 10 minutes to disinfect a surface), it necessarily leaves a "residue" capable of activating a properly calibrated "bleach indicator test." (*Id.* ¶ 45.) The commercial's representation to the contrary is literally false.

Reckitt argues that Clorox's pleading is deficient because it does not allege that Clorox has conducted a separate "bleach residue test" and obtained contrary results.  (Mot. 5.)  Such a requirement would turn the Lanham Act on its head.  Where, as here, an ad cites or depicts the results of "tests," a plaintiff can prove falsity by showing that the tests in question "do not establish the proposition asserted by the defendant."  *Southland Sod*, 108 F.3d at 1139 (quoting *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 63 (2d Cir. 1992)).  Clorox has done just that by pleading that Reckitt's test is deficient and fails to establish that LDC leaves no chemical residue.

***Third***, as noted above, Reckitt's bleach-test ad necessarily, if not literally, represents that CCU is unsafe for use near food or in kitchens.  After the "bleach test" turns the CCU apple brown, the commercial shows "real people" reacting with disdain:  "I wouldn't even want to touch this"; or "What do you even do with that?  Like, who is going to eat that?"  (Compl. Ex. 2.)  The self-evident implication is that CCU is unsuitable for use in food-preparation settings.

Lest there be any doubt about its message, Reckitt's own counsel apparently was deceived by the ad.  The motion claims that CCU will "cause an apple to turn brown."  (Mot. 5.)  But ***CCU*** does not turn apples brown.  The ***chemical assay*** used in Reckitt's commercial does, leaving viewers (and, it seems, Reckitt's lawyers) with the distinct impression that CCU is unsafe to use in kitchens or near food.  As set forth in Clorox's Complaint, that message is false.  EPA, which regulates all disinfecting products, has repeatedly approved CCU for use in the kitchen, in accordance with its label instructions.  (Compl. ¶¶ 46-47 (citing 7 U.S.C. § 136a(c)(5)(C).)  *See also Helping Hand Tools v. EPA*, 836 F.3d 999, 1010 (9th Cir. 2016) (EPA scientific opinions entitled to deference).

Reckitt's online ads follow the same basic pattern.  One ad shows CCU and its list of ingredients, only for them to be wiped away by LDC.  Another ad juxtaposes the safety warnings for CCU with LDC.  Both ads then claim that LDC has "Only 3 ingredients," "Kills 99.9% of germs," and leaves "No harsh chemical residue."  (Compl. ¶¶ 49-50.)  This side-by-side comparison implies that LDC achieves comparable results to CCU while sparing consumers the "harsher" ingredients of the latter product.  (*Id*. ¶¶ 51-53.)  As explained above, that message is untrue.[10]

---

[10] Reckitt argues that Clorox has admitted that LDC "has a lower concentration of this active ingredient than" CCU, and therefore the "claim lacks plausibility on its face."  (Mot. 8.)  This

### 2.     Reckitt's Attacks on Clorox Disinfecting Wipes

Clorox has also adequately alleged falsity and deception as to Reckitt's commercials comparing Clorox Disinfecting *Wipes* to Lysol Disinfectant *Spray*.  In this series of ads, Reckitt claims that Lysol Disinfectant Spray can "Kill the #1 Cause of the Cold," while Clorox Disinfecting Wipes cannot.  (*See id.* ¶¶ 62-76.)  But Reckitt did not stop there.  When the television commercial cuts to a side-by-side graphic of the products' germ-killing capacities, the word "Spray" drops from the frame—leaving consumers to watch ***"Lysol"*** outperform ***"Clorox"*** at eradicating germs.  (*Id.* ¶ 67-68.)  Likewise, in its social media ads, Reckitt claims that "***Lysol*** Kills #1 Cause of Colds," and "***Lysol*** wins" at "kill[ing] the #1 Cause of the Cold."  (*Id.* ¶¶ 72-76.)

As set forth in Clorox's Complaint, these ads convey two false messages.  First, through apples-to-oranges comparisons and inaccurate visuals, the ads imply that the "Lysol" brand is more effective at killing the rhinovirus and other germs than the "Clorox" brand.  Second, Reckitt's comparison conveys that Clorox Disinfecting Wipes (and other Clorox products) are less efficacious at killing rhinovirus than Lysol Disinfecting Wipes.  (*Id.* ¶¶ 70-71.)  Both messages are false.  Lysol Disinfecting Wipes have no efficacy advantage over Clorox Disinfecting Wipes; to the contrary, the Clorox product is EPA approved to eradicate a number of microbes that the Lysol product is not (though neither is approved to disinfect against rhinovirus).  (*Id.*)  And Lysol does not have a brand-wide advantage over Clorox on efficacy against rhinovirus:  many Clorox products, including Clorox 4-in-One Disinfecting Spray (the product most comparable to Lysol Disinfectant Spray), are EPA approved for that organism.  (*Id.* ¶ 70.)

Reckitt's retort that the ads "make[] no mention of Lysol Disinfecting Wipes" is unavailing.  (Mot. at 6.)  Clorox alleges that the ads' misleading visuals and apples-to-oranges comparisons "purposely elide th[e] mismatch" between the wipe and spray products, enabling them to "convey the false and disparaging message that Clorox products, including Clorox Disinfecting Wipes, are inferior in quality to their Lysol counterparts."  (Compl. ¶ 61.)  That is sufficient to state a claim.

Moreover, as the Complaint further alleges, Reckitt has also misrepresented the efficacy of

---

argument might make sense had the advertisements claimed that LDC leaves a "less harsh residue." Instead, they falsely claim that Reckitt's product leaves "***no*** harsh chemical residue."

Lysol Disinfecting Wipes in its non-comparative advertising.  Reckitt's social media ads show an image of Lysol Disinfectant Spray along with the claim that it "kills over 100 illness causing germs." (*Id.* ¶¶ 78-82.)  That statement may be true, but the very next screen shows an image of Lysol Disinfecting *Wipes* alongside Lysol Disinfectant Spray.  By displaying both Lysol products in this fashion, the ads send the clear message that ***both*** can "kill over 100 illness causing germs." (*Id.*) That message is false.  Lysol wipes are not approved by EPA to disinfect against "100 illness causing germs." (*Id.* ¶ 82.)  Reckitt's only response—that Clorox "failed" to identify the "substantial portion of consumers" who "have actually been misled" by these ads (Mot. 8)—is, as explained above, a non-starter.  There is no requirement that Clorox prove its entire case before filing a complaint.

### 3.    Reckitt's Wipe-Strength Comparisons

The Complaint also details how Reckitt's "kettlebell" ads comparing the strength of Lysol Disinfecting Wipes to Clorox Disinfecting Wipes are false and misleading.  Reckitt does not dispute that the ads claim that Lysol Disinfecting Wipes are more durable and more resistant to tearing than Clorox Disinfecting Wipes.  Instead it raises a grab-bag of non-issues.  (Mot. 14.)  Reckitt once again repeats that the Complaint does not allege "specific facts" demonstrating precisely who was "actually deceived," though there is no such pleading requirement.  It insists that the ad "does not expressly claim that Lysol Wipes perform better on 'extreme stress tests,'" though that is precisely what the ads purport to show.  And it argues that the Complaint runs afoul of Rule 9(b) by alleging "on information and belief" that the ads' dramatization "does not actually reflect the results of any rigorous or sound comparative strength testing," though there is no such pleading prohibition.

As to the last point, even when Rule 9(b) applies, the rule against allegations of "information and belief" is "relaxed as to matters peculiarly within the opposing party's knowledge."  *Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987).  In such circumstances, the allegation need only be "accompanied by a statement of the facts on which the belief is founded."  *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989).  Here, the Complaint alleges that Clorox "has rigorously tested the durability of Clorox Disinfecting Wipes, and has substantiated that they are able to withstand consumer use of sufficient duration to exhaust the antibacterial solution on

the products" and are "highly unlikely to rip before a consumer finishes using it to clean and/or disinfect a surface." (Compl. ¶ 91.)  The Complaint then asserts, on information and belief, that Reckitt's "test" is not "rigorous or sound" because it is impossible to replicate:  "neither product is actually long enough to serve as a 'handle' when holding a kettlebell weight." (*Id.* ¶ 92.)  And the ad itself notes that it is a "dramatization" of "lab results," the details of which are known only to Reckitt. (*Id.* ¶ 88.)  These allegations readily satisfy the requirements of both Rule 8 and Rule 9(b).

### 4.    Reckitt's Toilet Bowl Cleaner Comparisons

Finally, the Complaint alleges how and why Reckitt's toilet-bowl-cleaner ads are false and misleading.  One commercial shows Lysol Power Toilet Bowl Cleaner sanitizing a filthy toilet in a matter of seconds.  It then depicts a side-by-side test between Lysol Power Toilet Bowl Cleaner and Clorox Regular Liquid Bleach, and declares that Lysol has "10X MORE CLEANING POWER THAN CLOROX." (*Id.* ¶¶ 96-97.)  The "10X More Cleaning Power" claim also appears in at least one other commercial, on certain packaging, and on in-store displays. (*Id.* ¶¶ 99-101.)

These advertisements convey multiple false and misleading messages.  ***First***, the unqualified "10X More Cleaning Power" claim is false because the Lysol product's purported advantage relates ***only*** to rust and limescale, and not to organic matter. (*Id.* ¶ 102.)  *See, e.g.*, *Bellsouth Telcoms., Inc. v. Hawk Communs., LLC*, 2004 U.S. Dist. LEXIS 9413, at *30 (N.D. Ga. Apr. 12, 2004) (when there are "material differences between the products or attributes of their performance, those differences must be clearly disclosed in the advertisement").  ***Second***, even as to rust and limescale, Reckitt's claim of superiority over "Clorox" is false.  Clorox also sells an acid-based cleaner that, like Lysol Power Toilet Bowl Cleaner, targets mineral stains.  By focusing on non-comparable products, Reckitt reinforces the overall message that its products are superior to Clorox's. (Compl. ¶¶ 103-104.)  ***Third***, the ads depict Lysol Power Toilet Bowl Cleaner working in a matter of seconds, even though the product takes at least ***10 minutes*** to remove stains from toilets. (*Id.* ¶ 107.)

Reckitt argues that these false and misleading claims are somehow cured by the ads' inclusion of tiny, fine-print disclaimers. (Mot. 13.)  Numerous courts have rejected this defense. For example, in *23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889 (N.D. Cal. 2018), a case on which Reckitt relies, this Court concluded that "an asterisk footnote" could not cure the

defendant's deceptive advertising.  *Id.* at 909.  Other courts, including the Ninth Circuit, routinely hold the same.  *E.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-40 (9th Cir. 2008) (consumers should not be expected to "look beyond misleading representations" to "small print"); *Southland Sod*, 108 F.3d at 1144-45 (whether "disclaimer" cures ads is a question for "a "reasonable jury" to decide); *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 892 (N.D. Cal. 2016) ("[B]inding authority therefore strongly suggests that courts cannot hold as a matter of law that disclaimers vitiate claims for misleading representations.'); *Johns v. Bayer Corp.*, 2010 U.S. Dist. LEXIS 62804, at *12 (S.D. Cal. June 24, 2010) ("While there are disclaimers and qualifying language, determining whether a reasonable consumer would be deceived is inappropriate at this stage of the litigation.").  Clorox knows of no court that has adopted Reckitt's position.[11]

## II.  CLOROX HAS ADEQUATELY ALLEGED MATERIALITY AND INJURY

### A.  Materiality

An advertising claim is material if it is "likely to influence the purchasing decision," *Southland Sod*, 108 F.3d at 1139, or if it relates "to an inherent quality or characteristic" of a product, *Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, 2014 U.S. Dist. LEXIS 53775, at *11 (N.D. Cal. Apr. 17, 2014).  At the pleading stage, a court must "accept Plaintiff's allegations" of materiality "as true and in the light most favorable to it."  *JST Distrib., LLC v. CNV.com, Inc.*, 2018 U.S. Dist. LEXIS 222222, at *12-13 (C.D. Cal. Mar. 7, 2018)

Clorox's allegations of materiality easily pass muster.  Clorox details Reckitt's numerous attacks on its products' inherent qualities or characteristics, including their safety for household use, their efficacy at killing germs, and their likelihood of disintegrating during use.  Ads attacking the "safety" of a competitor's products are plausibly "material to a consumer's decision to purchase the product."  *Id.*  By the same token, ads that "are directed at what is undisputedly the primary purpose of the products at issue, namely, to kill germs" give "rise to a plausible inference that a reasonable

---

[11] Reckitt relies exclusively on *Cannarella v. Volvo Car United States LLC*, 2016 U.S. Dist. LEXIS 192449 (C.D. Cal. Dec. 12, 2016).  That case is inapposite.  There, a "text along the bottom of" a YouTube ad "inform[ed] the viewer that [the product discussed] was 'not available to the general public.'"  *Id.* at *20.  The disclaimer did not cure the ad's falsity, but instead suggested the video was not "tied to goods, services, or items used in commerce."  *Id.*

consumer would consider them material." *Won Kyung Hwang v. Ohso Clean, Inc.*, 2013 U.S. Dist. LEXIS 54002, at *54-55 (N.D. Cal. Apr. 16, 2013).[12]

Clorox has also credibly alleged that Reckitt's advertising is likely to influence consumers' purchasing decisions by "sow[ing] doubts in consumers' minds about the efficacy and safety of Clorox products" (Compl. ¶ 110), with the "the purpose and effect of . . . inducing them to purchase Lysol products" instead (*id.* ¶ 113).   Moreover, Reckitt invested heavily in its misleading campaign, airing its ads thousands of times on national television (*e.g.*, *id.* ¶¶ 37, 62, 84), and millions of times on the internet (*e.g.*, *id.* ¶¶ 48, 78, 81).  This investment belies Reckitt's argument that the campaign was "irrelevant" to consumer purchasing decisions.  "The expenditure by a competitor of substantial funds in an effort to deceive consumers and influence their purchasing decisions justifies the existence of a presumption that consumers" were, in fact, deceived and influenced.  *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986) (presuming deception and reliance).

**B.    Injury**

Reckitt next insists that Clorox has not pleaded how each "specific ad" has caused Clorox an "identifiable harm."  Reckitt cites no authority suggesting that Clorox must quantify its losses at the pleading stage, because none exists.  (Mot. 16.)  Clorox alleges that Reckitt's advertising "has diverted to Reckitt sales that Clorox otherwise would have made."  (Compl. ¶ 111.)  That is more than sufficient.  A complaint need not "plead the customers' names" or the amount of sales lost. *Openwave Messaging, Inc. v. Open-Xchange, Inc.,* 2016 U.S. Dist. LEXIS 150713, at *15 (N.D. Cal. Oct. 28, 2016).  Before discovery, a plaintiff need only allege its "loss [of] sales because" of the defendant's advertisements, a "paradigmatic direct injury from false advertising." *Id.*[13]

---

[12] Other courts routinely hold the same.  *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, 2017 U.S. Dist. LEXIS 171757, at *10 (S.D. Cal. Oct. 16, 2017) (statement material when it was "reasonable to infer that [it] would influence customers' purchasing decisions"); *Am. Specialty Health Grp., Inc. v. Healthways, Inc.*, 2012 U.S. Dist. LEXIS 147522, at *13 (S.D. Cal. Oct. 12, 2012) (same when "the false advertising concerns the very nature of the product"); *see also WIKA Instrument I, LP v. Ashcroft, Inc.*, 2013 U.S. Dist. LEXIS 202010, at *15 (N.D. Ga. July 3, 2013) (materiality "is self-evident from the alleged misrepresentations concerning the safety" of the product).

[13] Reckitt's argument is at odds with the text of the Lanham Act, which provides a cause of action for any person "who ***believes*** that he or she is or is ***likely*** to be damaged" by false or misleading advertising.  15 U.S.C. § 1125(a)(1)(B) (emphases added).

The same is true of Clorox's allegation that Reckitt's advertising "is damaging Clorox's goodwill and business" by sowing "doubts in consumers' minds about the efficacy and safety of Clorox products as a household cleaning and disinfecting agents." (Compl. ¶ 110.)  Allegations that a competitor "disparaged" a plaintiff's "business and products" provide "an adequate basis to proceed under § 1125(a)," even if the plaintiff later must later adduce at trial "*evidence* of injury proximately caused by" the defendant's "alleged misrepresentations."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014) (emphasis in original): *see also Franklin Fueling Sys. v. Veeder-Root Co.*, 2009 U.S. Dist. LEXIS 72953, at *14-15 (E.D. Cal. Aug. 11, 2009) (allegation that "as a result of defendant's actions," the plaintiff "has suffered direct diversion of sales and/or lessening of the goodwill" is "sufficient to plead damages under the controlling law").[14]

## III.   THE COMPLAINT STATES A CLAIM UNDER CALIFORNIA'S UNFAIR COMPETITION LAW AND FALSE ADVERTISING LAW

Reckitt seeks dismissal of Clorox's state-law claims on the grounds that (1) Clorox lacks standing under California's UCL and FAL and (2) no reasonable consumer would be misled by Reckitt's ads.  Neither argument withstands scrutiny.

### A.   Clorox Has Standing Under the UCL and FAL

The Ninth Circuit has repeatedly held that the UCL and FAL are "'broad' and 'sweeping' to 'protect both consumers *and competitors* by promoting fair competition in commercial markets for goods and services.'"  *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) (quoting *Kwikset Corp. v. Super. Ct.*, 120 Cal. Rptr. 3d 741 (2011)) (emphasis added).  Reckitt nevertheless insists that, to have standing under either law, the plaintiff himself must have relied on the defendant's advertising.  Like Reckitt's ads, this argument is built on a half-truth.

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. Prof. Code § 17200.  As this Court has observed, a plaintiff must plead its own reliance when alleging "fraud" under the UCL.  *23andMe*, 356 F. Supp. 3d at 911 (Chen, J.).  Critically, however, "this analysis does not apply to the § 17200 claim to the extent it simply alleges an unfair act or

---

[14] In any event, injury is presumed when, as here, the defendant engaged in false comparative advertising.  *TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 831 (9th Cir. 2011); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 209 n.8 (9th Cir. 1989).

practice." *Id.*  That is because, the Court explained, "[u]nfairness is measured on a standard different from fraud—a defendant competitor's misrepresentation can be unfair even if the plaintiff itself was not deceived by the misrepresentation." *Id.*; *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 325 n.17 (2009) ("There are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application.").

For this reason, a competitor need not allege first-party reliance to have standing.  *23andMe*, 356 F. Supp. 3d at 911; *Youngevity Int'l v. Smith*, 2018 U.S. Dist. LEXIS 144629, at *12-15 (S.D. Cal. Aug. 23, 2018) ("[C]ompetitor-plaintiffs have standing . . . under the UCL as long as they can demonstrate some specific, identifiable injury, even if they do not plead 'actual reliance.'"); *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 548 (2013) (holding that a plaintiff-competitor, who alleged loss of market share, had alleged "an identifiable trifle of injury" to satisfy standing under the UCL).

### B.     Clorox Has Alleged that Reasonable Consumers Are Deceived by Reckitt's Ads

Reckitt also argues that no "reasonable consumer" would be misled by any of its advertisements.  Whether "a business practice is deceptive will usually be a question of fact," and it is a "rare situation in which granting a motion to dismiss is appropriate."  *Williams*, 552 F.3d at 938-40.  To do so, the Court must conclude "as a matter of law[] that no reasonable consumer could be deceived by" the advertising.  *Pecanha v. Hain Celestial Grp.*, 2018 U.S. Dist. LEXIS 11739, at *7 (N.D. Cal. Jan. 24, 2018); s*ee also Coe v. Gen. Mills*, 2016 U.S. Dist. LEXIS 105769, at *15 (N.D. Cal. Aug. 10, 2016) (defendant must show it would be "impossible for Plaintiffs to prove that a reasonable consumer was likely to be deceived").  As explained in detail above, Clorox adequately pleaded that each Reckitt ad literally, necessarily, or implicitly misled reasonable consumers.

## IV.     THE COMPLAINT STATES A CLAIM AGAINST RECKITT BENCKISER LLC

Finally, Reckitt argues that the Complaint must be dismissed as to both Reckitt Benckiser LLC ("Reckitt USA") *and* Reckitt Benckiser Group PLC ("Reckitt UK"), because Clorox's allegations do not "distinguish between" the two defendants.  Without such distinctions, Reckitt

1   argues, neither entity has adequate "notice of the claims asserted against it."[15]  (Mot. at 11.)

2   In a separate Motion to Dismiss for Lack of Personal Jurisdiction, Reckitt argues that Reckitt

3   UK is not subject to this Court's jurisdiction, because it had no involvement in the alleged false

4   advertising.  Rather, as set forth in a sworn declaration from a Reckitt USA marketing manager,

5   Reckitt USA unilaterally "created, produced and published the ads," in addition to deciding "where

6   to place the advertising at issue, for how long, both in social media and in commercials."  (Dkt. 43 at

7   2.)  Reckitt likewise asserted that "Reckitt USA's Marketing Group, R&D, Regulatory, and Legal

8   Departments created, produced and published the ads at issue."  (Dkt. 38 at 3.)

9   In light of these representations, Clorox has voluntarily dismissed Reckitt UK as a

10  defendant.[16]  But Reckitt's assertion that the claims against Reckitt USA should also be dismissed

11  goes a bridge too far.   Reckitt USA has proffered a sworn declaration acknowledging its

12  responsibility for all of the misconduct alleged.  It defies common sense for Reckitt USA to assert, in

13  the same breath, that it somehow lacks "notice of the claims asserted against it."  (Mot. at 11.)

14  Indeed, in the case on which Reckitt relies, the court dismissed *one* defendant, not all of them, for

15  the reason that the plaintiff treated "disparate parties identically."  *Powell v. Residential Mortg.*

16  *Capital*, 2010 U.S. Dist. LEXIS 59698, at *7 (N.D. Cal. May 24, 2010).   The result can be no

17  different here.

18                                          **CONCLUSION**

19  For the foregoing reasons, Reckitt's Motion to Dismiss for Failure to State a Claim should be

20  denied.

21

22  [15] While mostly academic, Reckitt's assertion that a complaint can never "define[] the parties" as a

23  "single entity" is incorrect.  (Mot. 11.)  In *Long v. Graco Children's Products*, 2013 U.S. Dist.
    LEXIS 121227 (N.D. Cal. Aug. 26, 2013), for example, the plaintiff's false-advertising complaint

24  referred to the "ultimate parent corporation" and its subsidiary as "Defendants." *Id.* at *2, *36-37.
    Denying the motion to dismiss, the court held that the plaintiff's "explanation that conduct attributed

25  to 'Defendants' refers to both [parties] is reasonable and plausible."   Whether both a parent and
    subsidiary "did or did not in fact engage in some act is not an issue for consideration on a motion to

26  dismiss." *Id.* at *38; *see also In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033,
    1059 (S.D. Cal. 2017) ("[S]ome level of group pleading is permissible.").

27  [16] Clorox reserves the right to seek discovery from Reckitt UK should the facts and circumstances so

28  warrant.

1    Dated: May 23, 2019

2                                           Respectfully submitted,

3                                           */s/ Steven A. Zalesin*

4                                           PATTERSON BELKNAP WEBB & TYLER LLP

5                                           Steven A. Zalesin (*pro hac vice*)
                                            sazalesin@pbwt.com
6                                           Jane Metcalf (*pro hac vice*)
                                            jmetcalf@pbwt.com
7                                           1133 Avenue of the Americas
                                            New York, New York 10036
8                                           Telephone (212) 336-2110
                                            Facsimile (212) 336-2111

9

10                                          LAFAYETTE & KUMAGAI LLP
                                            Gary T. Lafayette (SBN 88666)
11                                          glafayette@lkclaw.com
                                            Brian H. Chun (SBN 215417)
12                                          bchun@lkclaw.com
                                            1300 Clay Street, Ste. 810
13                                          Oakland, California  94612
                                            Telephone (415) 357-4600
14                                          Facsimile (415) 357-4605

15                                          THE CLOROX COMPANY
                                            Mark W. Danis (SBN 147948)
16                                          mark.danis@clorox.com
                                            1221 Broadway
17                                          Oakland, California  94612

18                                          *Attorneys for Plaintiff The Clorox Company*

19

20

21

22

23

24

25

26

27

28

Opposition to Motion to Dismiss
Case No. 19-cv-01452-EMC