UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CLOROX COMPANY,<br><br>                    Plaintiff,<br><br>          v.<br><br>RECKITT BENCKISER GROUP PLC, et al.,<br><br>                    Defendants. | Case No.  19-cv-01452-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 44 |

The Clorox Company ("Clorox") brings suit against Defendant Reckitt Benckiser, LLC ("Reckitt") for false advertising under the Lanham Act and California's Unfair Competition Law and False Advertising Law.  Currently before the Court is Reckitt's motion to dismiss Clorox's complaint.  For the reasons discussed below, the Court **GRANTS in part** and **DENIES** in part Reckitt's motion.

## I.     BACKGROUND

A.     Factual and Procedural Background

The complaint alleges the following.  Docket No. 1 ("Compl.").  Clorox produces and sells household cleaning and disinfecting products under the Clorox brand.  *Id.* ¶ 2.  Reckitt[1] produces and sells household cleaning, sanitizing, and disinfecting products under the Lysol brand.  *Id.*  Clorox and Lysol are the top two brands in the United States market for household cleaning products, as measured by sales revenue.  *Id.* ¶ 15.

---

[1] Clorox originally also named the United Kingdom-based Reckitt Benckiser Group, PLC as a defendant.  Compl. ¶ 14.  Reckitt is the principal United State subsidiary of Reckitt Benckiser Group, PLC.  *Id.*  After Reckitt Benckiser Group, PLC filed a motion to dismiss for lack of personal jurisdiction, Clorox voluntarily dismissed it from the action.  Docket Nos. 38, 55.

Clorox claims that Reckitt has undertaken multiple false and deceptive advertising campaigns designed to erode consumer confidence in Clorox and boost sales of Lysol products. *Id.* ¶ 6.  The advertisements purport to reveal deficiencies in Clorox products while claiming the superiority of Lysol products.  *Id.* ¶ 20.  Each challenged advertisement is described in detail below.  Clorox alleges that its goodwill and business have been injured due to Reckitt's advertisements because they lead customers to doubt the efficacy and safety of Clorox products. *Id.* ¶ 110.  Clorox also claims that the advertisements have diverted its sales to Reckitt.  *Id.* ¶ 111.

Clorox filed the complaint on March 20, 2019, asserting three causes of action: (1) false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) violation of California's Unfair Competition Law ("UCL"), Business and Professional Code § 172000, *et seq*; and (3) violation of California's False Advertising Law, Business and Professional Code § 175000, *et seq*.  Reckitt filed the instant motion to dismiss on May 6, 2019.  Docket No. 44 ("Mot.").

B.      Advertisements at Issue

Clorox's complaint identifies six categories of offending Reckitt advertisements.

1.      "Bleach Indicator Test" Advertisements for Lysol Daily Cleanser

The "Bleach Indicator Test" television advertisement depicts a side-by-side test of Clorox Clean Up and Lysol Daily Cleanser.  Compl. ¶ 38.  One cutting board is first cleaned with Clorox Clean Up and another cleaned with Lysol Daily Cleanser, then an apple slice is placed on each cutting board.  *Id.*  The apple slice placed on the board cleaned with the Clorox product turns brown, while the other apple slice does not.  *Id.* ¶ 39.  Four individuals labeled as "real people" negatively react to the browned apple.  *Id.* ¶ 40.  One person says, "I wouldn't even want to touch this."  Docket No. 56 ("Opp.") at 4.  Another says, "What do you do with that? Like who's going to eat that?"  *Id.*  Finally, a voice-over states, "unlike Clorox Clean Up, Lysol Daily Cleanser has only three simple ingredients and leaves surfaces free from harsh chemical residue."  Compl. ¶ 41.

Reckitt has a similar advertisement on YouTube which depicts "real people" applying a "bleach indicator test" to food preparation surfaces treated with Clorox Clean Up and Lysol Daily Cleanser.  *Id.* ¶ 43.  When the Clorox product activates the test and the Lysol product does not, the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "real people" indicate that they prefer the Lysol product.  *Id.*

2          2.     <u>"Spray Away" Advertisements for Lysol Daily Cleanser</u>

3          A Reckitt advertisement disseminated on social media platforms shows an image of Clorox

4 Clean Up and its list of ingredients being sprayed and wiped away with Lysol Daily Cleanser.

5 Compl. ¶ 49.  The advertisement then flashes banners stating: "Lysol Daily Cleanser[;] Only 3

6 ingredients," "Kills 99.9% of germs (when used as directed)," and "No harsh chemical residue."

7 *Id.* ¶ 50.  A Facebook advertisement juxtaposes the safety warnings of Clorox Clean Up and Lysol

8 Daily Cleanser and concludes with this same statement.  *Id.* ¶ 54.

9          3.     <u>"Fake It," "Game Over," and "Spray Away" Advertisements for Lysol Disinfectant</u>

10              <u>Spray</u>

11          A television advertisement shows a group of children pretending to have colds to get out of

12 going to school.  Compl. ¶¶ 62–63.  The mother sprays a counter with Lysol Disinfectant Spray

13 and an announcer states, "You can't protect them from an imaginary cold.  But with Lysol you can

14 help protect them from a real one."  *Id.* ¶ 64.  Then the ad shows a split screen with the Clorox and

15 Lysol symbols on either side, and "germs" on both sides of the screen; the germs on the Lysol side

16 of the screen disappear while those on the Clorox side remain.  *Id.* ¶¶ 65–66.  In place of the

17 germs, the Lysol screen displays the statement, "KILLS THE #1 CAUSE OF THE COLD" and an

18 announcer states, "Lysol Disinfectant Spray kills the number one cause of the cold and Clorox

19 Wipes don't."  *Id.* ¶¶ 66–67.  After the commercial had been running for several months, in

20 response to a protest by Clorox, Reckitt revised the side-by-side images to clarify in "minuscule

21 type" that the comparison was between Clorox Disinfecting *Wipes* and Lysol Disinfecting *Spray*.

22 *Id.* ¶ 69.

23          Another television commercial entitled "Game Over" portrays a videogame-like scene in

24 which the Lysol Disinfecting Spray shoots down germs (assumed to be rhinovirus) while Clorox

25 Disinfecting Wipes do so with less efficiency, thereby losing the game.  *Id.* ¶ 72.  The screen then

26 flashes "Lysol wins" and a second screen depicts the Lysol spray and states "Kills the #1 cause of

27 the cold.  Clorox wipes don't."  *Id.*

28          The "Spray Away" online advertisement shows Lysol Disinfecting Spray and the statement

1   "Lysol Kills the #1 cause of colds." *Id.* ¶ 74.  Next, the Lysol spray sprays a container of Clorox

2   Disinfecting Wipes off the screen.  *Id.*  The screen flashes, "Clorox wipes don't."  *Id.*

3          4.    "Strength Test" Advertisement for Lysol Wipes

4        This commercial depicts four people at the gym putting disinfectant wipes to a "strength

5   test" by using them to pick up kettlebell weights.  Compl. ¶¶ 84–85.  The Clorox wipe rips

6   immediately while the Lysol wipes holds the weight for several seconds.  *Id.* ¶ 86.  A disclaimer

7   states, "Dramatization.  Based on lab results.  Supervised demonstration.  Do not attempt."  *Id.*

8        A second, nearly identical version of this advertisement consists of different people at the

9   gym doing the same strength test and contains the same disclaimer; a voice-over declares "Lysol

10   for the win," and labels the Lysol wipe the "winner."  *Id.* ¶ 88.

11        A different Facebook advertisement claims, "Lysol wipes are stronger than competition"

12   and depicts a Lysol wipe intact next to a torn "competitive" wipe that "appears below a version of

13   the famous Clorox chevron, in which the Clorox brand name has been replaced with the words 'vs

14   leading competitor.'"  *Id*. ¶ 89.

15          5.    "No Scrubbing" Advertisements for Lysol Power Toilet Bowl Cleaner

16        A television commercial shows a woman squirting Lysol Power Toilet Bowl Cleaner into a

17   toilet and flushing it; the toilet bowl instantly becomes clean without the use of a brush.  Compl. ¶

18   96.  She says, "that was surprisingly not terrible."  *Id.*  It then depicts the results of a side-by-side

19   efficacy test comparing Lysol Power Toilet Bowl Cleaner and Clorox Regular Liquid Bleach.  *Id.*

20   ¶ 97.  The results show the Lysol surface is clean and the Clorox surface is dirty.  *Id.*; *see also id.*,

21   Exh. 6.  A small disclaimer states, "Cleaning Power vs. Clorox Regular Liquid Bleach on

22   limescale and rust stains.  Results after contact with product for 10 minutes, followed by rinsing."

23   *Id.* ¶ 98.  A small banner states, "10X more cleaning power than Clorox."  *Id.* ¶ 97.

24        A similar commercial shows the same side-by-side test in which the Clorox side fails to

25   clear limescale buildup while the Lysol side cleans it completely.  *Id.* ¶ 99.  A voiceover states,

26   "Clorox Toilet Bowl Cleaner with Bleach is no match against limescale," and a banner that states,

27   "10X" flashes across the screen.  *Id.*  A "minuscule" disclaimer states that the results involve

28   Lysol Power Toilet Bowl Cleaner and Clorox Toilet Bowl Cleaner Clinging Bleach Gel, which is

United States District Court
Northern District of California

1    a distinct product from the "Clorox Toilet Bowl Cleaner with Bleach" product referenced in the

2    voice-over. *Id.* ¶ 100.

3        Additionally, the "10X More Cleaning Power than Bleach" claim also appears on various

4    in-store displays and on product packaging. *Id.*, Exh. 8; *id.* ¶ 101. Clorox also claims Reckitt uses

5    the phrase "10X Cleaning Power" on its product packaging. *Id.* ¶ 105.

6        6.    <u>Non-Comparative Advertisements</u>

7        An advertisement shows actors spraying and immediately wiping surfaces clean, and an

8    announcer states that Lysol Daily Cleanser kills "99.9% of germs." Compl. ¶ 57.

9        Another online advertisement shows a boy sneezing at a table, then displays the Lysol

10    Disinfecting Spray with the words, "kills over 100 illnesses causing germs" and a disclaimer that

11    "Lysol Disinfecting Spray kills germs on hard surfaces when used as directed." *Id.* ¶ 79. The next

12    screen depicts Lysol Disinfecting Spray along with Lysol Disinfecting Wipes and the tagline

13    "What it takes to protect." *Id.* ¶ 80. A near-identical advertisement shows a different boy

14    sneezing on a couch. *Id.* ¶ 81.

15        **II.**      <u>**LEGAL STANDARD**</u>

16        Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a

17    short and plain statement of the claim showing that the pleader is entitled to relief." A complaint

18    that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Fed. R. Civ. P.

19    12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to

20    state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

21    570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows

22    the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

23    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability

24    requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."

25    *Id.* (internal quotation marks omitted).

26        On a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true

27    and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St.*

28    *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court need not, however,

1   "assume the truth of legal conclusions merely because they are cast in the form of factual

2   allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal

3   quotation marks omitted).  Thus, "a Plaintiff's obligation to provide the 'grounds' of his

4   'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the

5   elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*,

6   478 U.S. 265, 286 (1986)).

7          Claims sounding in fraud or mistake are subject to the heightened pleading requirements of

8   Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with

9   particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To comply with this

10  heightened pleading standard, the plaintiff must allege the "who, what, when, where, and how" of

11  the alleged fraud.  *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003).  "The

12  plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.*

13         Although the Ninth Circuit has not definitively spoken as to whether Rule 9(b) applies to

14  Lanham Act claims, "the better reasoned [district court] authority is that, where a Lanham Act

15  claim is predicated on the theory that the defendant engaged in a knowing and intentional

16  misrepresentation, then Rule 9(b) is applicable." *23andMe, Inc. v. Ancestry.com DNA, LLC*, 356

17  F. Supp. 3d 889, 908 (N.D. Cal. 2018).  The false advertisement allegations in Clorox's complaint

18  imply that Reckitt knowingly or intentionally deceived consumers.  *See, e.g.,* Compl. ¶ 45

19  ("Reckitt appears to have deliberately designed its test to not detect the concentration of

20  hypocholorous acid in Lysol Daily Cleanser.").  Therefore, the Court will evaluate whether

21  Clorox's Lanham Act claim meets the requirements of Rule 9(b).

22         UCL and FAL claims sounding in fraud are also subject to the Rule 9(b) standard.  *See*

23  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018); *Kearns v. Ford Motor Co.*,

24  567 F.3d 1120, 1125 (9th Cir. 2009).  Clorox asserts that Reckitt knew or should have known that

25  its advertisements and promotions were untrue and misleading under the UCL and FAL.  Compl.

26  ¶¶ 122, 127.  Clorox's UCL and FAL claims are thus grounded in fraud and must also meet the

27  Rule 9(b) pleading standard.

28

United States District Court
Northern District of California

# III.    DISCUSSION

## A.    Clorox's Failure to Distinguish Between Reckitt Defendants

Reckitt's motion initially faulted Clorox for failing to distinguish between Reckitt and Reckitt Benckiser Group PLC in its pleadings.  Mot. at 11.  However, Clorox has since dismissed Reckitt Benckiser Group PLC from the action.  Docket No. 55.  Accordingly, Clorox's formerly undifferentiated allegations are no longer an issue; Reckitt is unambiguously the only defendant alleged to be responsible for the false advertisements.[2]

## B.    Lanham Act

Clorox alleges that Reckitt's advertisements violate Section 43(a) of the Lanham Act, which "authorizes suit against persons who make false and deceptive statements in a commercial advertisement about their own or the plaintiff's product." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002).  A prima facie case under Section 43(a) requires the plaintiff to demonstrate that: "(1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in a commercial advertisement or promotion; (3) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (4) the deception is material, in that it is likely to influence the purchasing decision; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by lessening of goodwill associated with the plaintiff's product." *Id.* at 835 n.4.

Reckitt asserts that Clorox has failed to establish the first, third, fourth, and sixth elements of its Lanham Act claim.

### 1.    Falsity

Falsity can be established in two ways.  First, a plaintiff may demonstrate that a challenged statement was "literally false, either on its face or by necessary implication." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139–40 (9th Cir. 1997).  Statements are literally false

---

[2] Reckitt demands that Clorox be ordered to amend its complaint to reflect the dismissal of Reckitt Benckiser Group PLC.  The Court does not consider such amendment to be necessary.

United States District Court
Northern District of California

by necessary implication where "the audience would recognize the claim as readily as if it had

been explicitly stated." *Aussie Nads U.S. Corp. v. Sivan*, 41 F. App'x 977 (9th Cir. 2002) (quoting

*Clorox Co. Puerto Rico v. Proctor & Gamble Co.*, 228 F.3d 24, 34 (1st Cir. 2000)).  Alternatively,

a plaintiff can show that "the statement was literally true but likely to mislead, confuse or deceive

consumers." *Southland Sod Farms*, 108 F.3d at 1139–40.

      Clorox's Lanham Act claim is premised on both "literally false" and "likely to mislead"

theories of falsity.  At the outset, Reckitt contends that all of Clorox's claims based on a "likely to

mislead" theory fail because the complaint does not allege specific facts showing that Reckitt's

advertisements conveyed misleading messages that deceived a significant number of people.  Mot.

at 4.  Reckitt is correct that "[w]hen the alleged representation is not an overt false statement[,] the

evidentiary showing required to sustain a Lanham claim is higher and proof that the advertising

actually conveyed the implied message and thereby deceived a significant proportion of the

recipients becomes critical."  *Genus Lifesciences Inc. v. Lannett Co.*, No. 18-cv- 07603-WHO,

2019 U.S. Dist. LEXIS 76346, at *18 (N.D. Cal May 3, 2019) (citation and internal quotation

marks omitted).  Thus, courts have required plaintiffs to present "proof that the advertising

actually conveyed the implied message and thereby deceived a significant portion of the

recipients" at the summary judgment stage or at trial.  *William H. Morris Co. v. Grp. W. Inc.*, 66

F.3d 255, 258 (9th Cir. 1995).

      However, that evidentiary showing is not required to survive a motion to dismiss.  Actual

deception is a question of fact, and at the pleading stage the plaintiff need only allege specific

misleading statements and explain why they are misleading in accordance with Rule 9(b).  This is

illustrated by *JHP Pharmaceuticals, LLC v. Hospira, Inc.*, 52 F. Supp. 3d 992 (C.D. Cal. 2014), a

case on which Reckitt relies.  The *JHP Pharmaceuticals* court acknowledged that a Lanham Act

claim based on misleading, but not literally false, statements ultimately requires a showing that the

statements "w[ere] actually conveyed to consumers" and that consumers were actually deceived.

*Id.* at 1003.  However, the court was careful to distinguish the showing required at the pleading

stage: "While [the plaintiff] has not yet produced actual evidence of these consumer beliefs, at the

motion to dismiss stage, the Court can accept allegations of such facts as sufficient."  *Id.*; *see Axis*

United States District Court
Northern District of California

8

1    *Imex, Inc. v. Sunset Bay Rattan, Inc.*, No. C 08-3931 RS, 2009 U.S. Dist. LEXIS 2667, at *10–11

2    (N.D. Cal. Jan. 7, 2009) (rejecting claim that a false advertising claim must plead "evidence of

3    actual or likely deception to purchasers," and holding that "the averment that the mislabeled boxes

4    were commercially available for sale to customers who could be deceived as to their origin is

5    sufficient to plead deception for purposes of maintaining the claim").[3]  Accordingly, dismissal of

6    Clorox's "likely to mislead" claims is not warranted merely because Clorox has not demonstrated

7    actual deception at this stage.  Rather, its pleading must plausibly suggest a likelihood to mislead.

8           The Court now proceeds to analyze the falsity of each challenged advertisement.

9           a.      "Bleach Indicator Test" Advertisements for Lysol Daily Cleanser

10          Clorox has sufficiently alleged that the "Bleach Indicator Test" advertisement comparing

11   the effect of Clorox Clean Up and Lysol Daily Cleanser on apples is false in three ways.

12          First, Clorox contends that the advertisement is literally false because it necessarily implies

13   that Clorox Clean Up is unsuitable or unsafe for use in kitchens, even though the Environmental

14   Protection Agency ("EPA") has in fact deemed the product safe for kitchen use.  Compl. ¶ 46.

15   Courts have determined that an advertisement can be literally false where it necessarily implies to

16   customers that a product is unsafe to consume.  *See, e.g.*, *Gen. Mills, Inc. v. Chobani, LLC*, 158 F.

17   Supp. 3d 106, 119 (N.D.N.Y. 2016) (finding plausible the allegation that an advertisement

18   claiming plaintiff's yogurt "contains the same 'stuff [that] is used to kill bugs'" "unambiguously

19   convey[s] the literally false message that [the yogurt] . . . is unsafe to consume").  The Bleach

20   Indicator Test depicts Clorox Clean Up turning food brown, causing people to recoil and exclaim,

21   "I wouldn't even want to touch this," and "What do you do with that? Like who's going to eat

22   that?"  Compl., Exh. 2.  It is reasonable to infer that these "words [and] images, considered in

23   context, necessarily imply [the] false message" that Clorox Clean Up is unsuitable or unsafe for

24   kitchen use.  *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007).

25

26   _____

27   [3] Reckitt also cites *Stiles v. Wal-Mart Stores, Inc.*, 2015 U.S. Dist. 117324 (E.D. Cal. Sept. 2,
     2015), where the court dismissed a false advertising claim on a Rule 12(b)(6) motion because the
     plaintiff did not allege specific facts showing the statement actually conveyed the misleading
28   message.  *Id.* at *9.  But *Stiles* is an outlier case that relied on *William H. Morris* as its authority;
     *William H. Morris* addressed the standard of proof at trial.  *See* 66 F.3d at 257.

Second, Clorox alleges that the Bleach Indicator Test is false because the result of the test depicted—that Lysol Daily Cleanser apparently leaves no residue that would affect an apple slice—is inaccurate.  According to Clorox, Lysol Daily Cleanser contains hypochlorous acid, "a form of bleach," so a "properly chosen and calibrated 'bleach indicator test' would detect the residue left by Reckitt's product."  Compl. ¶ 45.  Clorox alleges that Reckitt appears to have "deliberately designed its test to not detect the concentration of hypochlorous acid in Lysol Daily Cleanser."[4]  *Id.*  To prove that an advertisement based on product testing is literally false, a plaintiff must demonstrate that such tests "are not sufficiently reliable to permit one to conclude with reasonable certainty that they established the claim made."  *Southland Sod Farms*, 108 F.3d at 1139 (internal quotations omitted).  A plaintiff may attack either the validity of the defendant's tests directly or by showing that the tests are unsupported by other scientific tests.  *See id.*  Here, Clorox has plausibly alleged that Reckitt's test is not sufficiently reliable to permit one to conclude with reasonable certainty that Lysol Daily Cleanser leaves no bleach residue; Clorox has provided a scientific explanation as to why a properly-conducted test would have revealed the presence of bleach, contrary to the results conveyed by Lysol's Indicator Test.

Third, Clorox alleges that the voice-over in this commercial ("unlike Clorox Clean Up, Lysol Daily Cleanser has only three simple ingredients and leaves surfaces free from harsh chemical residue") is literally false because it necessarily implies that Lysol Daily Cleanser and Clorox Clean Up are comparable products but that the Clorox product leaves a harsh residue.  Compl. ¶¶ 40–41, 44.  Clorox contends that the two products are in fact *not* comparable, with different formulations and purposes.  Although usable in kitchens, Clorox Clean Up is a heavier duty product than Lysol Daily Cleanser.  Compl. ¶ 44.  The side-by-side test is thus misleading; Reckitt's attempt to "position Lysol Daily Cleanser as a 'simpler' or 'less harsh' substitute for CCU misrepresents the facts and deceives customers."  *Id.*

---

[4] Reckitt claims that scientific research demonstrates that hypochlorous acid does not leave any residue on food.  Docket No. 57 ("Reply") at 4.  This raises a factual dispute that is inappropriate for resolution at this stage.  On a motion to dismiss, the Court must accept as true all plausible factual allegations in Clorox's complaint.  *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

United States District Court
Northern District of California

United States District Court
Northern District of California

1     This "apples-to-oranges" theory of falsity underpins many of Clorox's claims in this

2  lawsuit.  Courts have held that misleading comparisons of this type are literally false by necessary

3  implication where non-comparable products are portrayed as otherwise equivalent (except for the

4  superior or inferior aspect being illustrated in the advertisement).  For example, in *Groupe SEB*

5  *USA, Inc. v. Euro-Pro Operating LLC*, the plaintiff (the maker of Rowenta-branded irons) sued

6  the defendant (the maker of Shark-branded irons) for advertising that Shark irons deliver "#1

7  MOST POWERFUL STEAM" in the form of "more grams per minute . . . when compared to

8  leading competition in the same price range," while explicitly referencing Rowenta products.  774

9  F.3d 192, 195 (3rd Cir. 2014).  But the Rowenta irons were in fact in a different price range.  *Id.* at

10  202.  The Third Circuit found that "based on a facial analysis of the product name or advertising,

11  . . . the consumer will unavoidably receive a false message . . . that the Shark steam irons offer the

12  most powerful steam, even when compared to Rowenta steam irons."  *Id*.  Omitted from the

13  advertisement and thus presumably unknown to a significant proportion of the recipients, *William*

14  *H. Morris Co.*, 66 F.3d at 258, was the material fact that the two products compared in the ad were

15  in different price ranges.

16     In *Doctor's Associates, Inc. v. QIP Holder LLC*, Subway alleged that a Quiznos

17  advertisement made an unfair comparison between the Quiznos Prime Rib sandwich (which

18  contained double the normal portion of meat) and the Subway Cheesesteak sandwich (which

19  contained a single portion of meat).  No. 3:06-cv-1710 (VLB), 2010 U.S. Dist. LEXIS 14687, at

20  *44 (D. Conn. Feb. 19, 2010).  The advertisement featured a "direct side-by-side comparison of

21  the two sandwiches along with the commentary by 'men on the street' indicating that the Subway

22  sandwich has 'little meat' or 'no meat' as well as by the text frame reading that Quiznos sandwich

23  has 'more than 2x the meat.'"  *Id*. at *50.  Quiznos argued that its sandwich actually contained two

24  times as much meat as the Subway sandwich.  *Id.* at *44.  However, the court found on summary

25  judgment that there was question of material fact as to whether the "two times the meat" claim

26  was false because despite knowing that Subway offered a comparable "double meat" sandwich,

27  Quiznos opted to compare a regular, single-portion Subway sandwich in the commercial.  *Id*. at

28  *48–49.  The commercial conveyed the "unambiguous message that the Quiznos' product contains

United States District Court
Northern District of California

1    at least twice the meat of Subway's product." *Id*. at *50.  Again the advertisement omitted the

2    material fact that the Subway Cheesesteak sandwich chosen for the ad was a single meat

3    sandwich, not the double meat sandwich.

4            These cases reflect that plaintiffs can establish literal falsity under the Lanham Act by

5    alleging that two products portrayed as comparable in an advertisement are not actually

6    comparable – that the advertisement omits differences which would have been material to

7    recipients.  *See Groupe SEB USA, Inc.*, 774 F.3d at 202; *Doctor's Associates, Inc.*,  2010 U.S.

8    Dist. LEXIS 14687, at *44.

9            Clorox has sufficiently alleged that Clorox Clean Up and Lysol Daily Cleanser are not

10   comparable.  There are differences in positioning, formulation and intended purpose of the Clorox

11   and Lysol products which were hidden from the recipients.  Namely, Clorox alleges that Clorox

12   Clean Up is a product "with the unique cleaning and disinfecting powers of bleach."  Compl. ¶ 3.

13   In contrast, Lysol Daily Cleanser is a "heavily diluted product that is intended, as its name

14   suggests, for everyday use as opposed to intensive cleaning and disinfection."  Compl. ¶ 22.

15   Clorox Clean Up is formulated with 1.84% bleach whereas Lysol Daily Cleanser is formulated

16   with only 0.017% hypochlorous acid, a chlorine-based antimicrobial agent similar to bleach.

17   Compl. ¶¶ 31, 33.  Clorox Clean Up also contains a detergent or surfactant that breaks down

18   grease, dirt, and soils, while Lysol Daily Cleanser does not.  Compl. ¶ 51.  In short, Clorox

19   contends Lysol Daily Cleanser is not a substitute for or comparable to Clorox Clean Up because

20   "it contains a much lower concentration of active ingredient, and is neither intended nor suitable

21   for intensive cleaning or disinfection."  Compl. ¶ 22.  The formulation and intended use of the two

22   products are different.  *See* Compl. ¶¶ 22, 31, 33, 44.  In fact, "Clorox markets a range of other

23   cleaning products such as Clorox Anywhere, a light-duty cleanser and sanitizer formulated with a

24   much lower concentration of bleach than CCU (0.0095%, as opposed to 1.84%)" that is more

25   comparable to Lysol Daily Cleanser.  Compl. ¶¶ 23, 31.  Thus, the ad showing different results

26   was misleading, because it implies the two products are comparable in function and intended use

27   when in fact they are not.  As in *Doctor's Associates*, Reckitt chose to compare a more heavy-duty

28   product, Clorox Clean Up, with a lighter, daily use product, Lysol Daily Cleanser, instead of

1   comparing truly comparable products of both companies.  2010 U.S. Dist. LEXIS 14687, at *48–

2   49.

3        In response, Reckitt claims that Clorox Clean Up is in fact comparable to Lysol Daily

4   Cleanser because the EPA has approved the Clorox Clean Up as "Gentle & Powerful Enough for

5   Daily Use," similar to the Lysol product.  Reply at 6 (alterations omitted).  As an initial matter,

6   Reckitt cites no authority for the proposition that the EPA's categorization of products makes

7   those products comparable for Lanham Act purposes.  More fundamentally, Reckitt's argument

8   raises a factual dispute that is improper for a motion to dismiss.  Reckitt did not ask the Court to

9   take judicial notice of the EPA's label approvals submitted with the Reply as Exhibits 6–9.  Even

10  if it had, the Court cannot accept the truth of the contents of the exhibits and create a factual

11  dispute at this juncture.  The Ninth Circuit recently cautioned:

12          "[t]he overuse and improper application of judicial notice and the
            incorporation-by-reference doctrine . . . can lead to unintended and
13          harmful results.  Defendants face an alluring temptation to pile on
            numerous documents to their motions to dismiss to undermine the
14          complaint, and hopefully dismiss the case at an early stage.  Yet the
            unscrupulous use of extrinsic documents to resolve competing
15          theories against the complaint risks premature dismissals of
            plausible claims that may turn out to be valid after discovery."
16

17  *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018).

18        Accordingly, Reckitt's contention that the parties' products are in fact comparable is not, at

19  this juncture, sufficient to negate Clorox's claim.

20              b.    "Spray Away" Advertisements for Lysol Daily Cleanser

21        Clorox has sufficiently alleged that the "Spray Away" advertisements comparing Lysol

22  Daily Cleanser and Clorox Clean Up are false in two ways.  First, like with the Bleach Indicator

23  Test, this advertisement allegedly compares apples-to-oranges.  The advertisement compares the

24  two lists of ingredients of the products and flashes banners stating "Lysol Daily Cleanser[;] Only 3

25  ingredients," "Kills 99.9% of germs (when used as directed)," and "No harsh chemical residue,"

26  Reckitt represents that Lysol Daily Cleanser "is a replacement for, and performs the same

27  functions as, Clorox Clean Up."  Compl. ¶¶ 49, 51.  As explained above, Clorox alleges that the

28  positioning, formulation, and purpose of Clorox Clean Up and Lysol Daily Cleanser are materially

United States District Court
Northern District of California

13

different, and thus an advertisement that juxtaposes the products and implicitly represents that the products are comparable is false.  *See* Compl. ¶¶ 22, 31, 33, 44.  Reckitt's response, again, is to insist that the two products are in fact comparable because the EPA has approved both for use as daily-use household cleaners.  Reply at 6.  This does not, however, negate Clorox's plausible claim in the complaint that by omitting mention of material differences between the products, the ad misleads consumers.

Second, Clorox alleges that the Facebook advertisement, which juxtaposes the safety warnings of Clorox Clean Up and Lysol Daily Cleanser and concludes with the same banner ("Only 3 ingredients," "Kills 99.9% of germs," and has "No harsh chemical residue") is likely to mislead consumers because it suggests that the Lysol product is "simpler" and has "fewer safety risks" and "impugns the safety of CCU by suggesting that consumers should shy away from products that require cautionary disclosures."  Compl. ¶ 55.  Clorox asserts that contrary to the implicit message of the ad, CCU is in fact safe for household use according as approved by the EPA.  Compl. ¶ 56.  Clorox also claims that in fact the active ingredient in the Lysol product, hypochlorous acid, is no gentler than the bleach in Clorox Clean Up.  *Id*.  These allegations are sufficient to explain why the "Spray Away" commercials mislead consumers by suggesting that Clorox Clean Up is less safe for household use.

c.     "Fake It," "Game Over," and "Spray Away" Advertisements for Lysol
        Disinfectant Spray

Clorox has also adequately alleged that the "Fake It," "Game Over," and "Spray Away" advertisements are literally falsity by necessary implication.  *See Southland Sod Farms*, 108 F.3d at 1139–40; *Aussie Nads U.S. Corp. v. Sivan*, 41 F. App'x 977 (9th Cir. 2002)).  The "Fake It" commercial's split screen with the Clorox and Lysol symbols on either side where the "germs" disappearing only on the Lysol side and the statement Lysol Disinfectant Spray kills the number one cause of the cold and Clorox Wipes don't," explicitly compares the two brands and products.  Compl. ¶¶ 65–67.  The "Game Over" video game sequence where "Lysol wins" over the Clorox symbol and the banner stating, "Kills the #1 cause of the cold.  Clorox wipes do not," also explicitly compares Lysol spray to Clorox wipes.  Compl. ¶ 72.  The "Spray Away" online

advertisement shows Lysol Disinfecting Spray spraying a container of Clorox Disinfecting Wipes and states, "Clorox wipes don't [kill the #1 cause of colds]," makes the same explicit comparison. Compl. ¶ 74.

Once again, Clorox alleges that these comparisons are false because the two products are not in fact comparable as the advertisements suggest. Compl. ¶ 70. Clorox asserts the ads "leave consumers with an unmistakable false impression" that Lysol products in general are more effective at eliminating germs than Clorox products. Opp. at 6; Compl. ¶¶ 70, 73. Clorox Disinfecting Wipes and Lysol spray "are distinct products that are not positioned for the same usage occasions." Compl. ¶ 61. Clorox explains that its wipes are "pre-moistened, anti-microbial wipes that consumers use to clean and disinfect surfaces throughout the home," Compl. ¶ 60, but the Lysol spray "belongs in a different product category and has different usage instructions." Compl. ¶ 21. Specifically, wipes are formulated to target different germs than disinfecting sprays. Compl. ¶ 70. The wipes are neither labeled nor EPA-approved to eradicate rhinovirus; the sprays do disinfect against rhinovirus. Compl. ¶¶ 21, 70. The key difference is between wipes and sprays, not Clorox and Lysol.

Indeed, both companies offer more comparable products. Compl. ¶ 70. If Reckitt had compared both companies' *sprays*, Clorox asserts that its "Clorox 4-in-One Disinfecting Spray, the product most comparable to the Lysol Disinfecting Spray product," is also "EPA-approved to disinfect against rhinovirus." *Id*. And if Reckitt had compared the companies' *wipes*, Clorox alleges that "neither product is approved for use against rhinovirus, so Lysol Disinfecting Wipes have no advantage in that regard . . . [and] Clorox Disinfecting Wipes are EPA-approved to eradicate more illness-causing germs than Lysol wipes. Compl. ¶ 71. Thus, advertisements comparing Clorox wipes with Lysol's spray arguably falsely implied to the consumer that the Lysol product was more effective than its Clorox counterpart, by comparing non-comparable products. These allegations are sufficient to establish falsity.

d.    "Strength Test" Advertisement for Lysol Wipes

The "Strength Test" advertisements show Clorox wipes ripping when trying to support a kettlebell while Lysol wipes remain intact for much longer. Clorox's claim that the advertisement

15

United States District Court
Northern District of California

is literally false because it insinuates that Lysol wipes are "of higher quality, are more durable, and are more resistant to tearing during use than Clorox wipes" fails. Compl. ¶ 90. Clorox has made no factual allegations that Lysol wipes are not of higher quality, more durable, and more resistant to tearing than Clorox. The complaint states only that the Clorox wipes are unlikely to rip under typical use conditions. Compl. ¶ 91. Because no claim of unfair comparison is made, the advertisement is not misleading in this respect.

There is more merit to Clorox's contention that the "strength test" conducted in the advertisement is unreliable and therefore literally false. Clorox claims that the test "is not capable of replication, because neither product is actually long enough to serve as a 'handle' when holding a kettlebell weight." Compl. ¶ 93. Because Clorox has alleged a factual basis for putting into doubt whether the test is "sufficiently reliable to permit one to conclude with reasonable certainty that [it] established the claim made," it has done enough to plead that the test is literally false. *Southland Sod Farms*, 108 F.3d at 1139. This case is distinguishable from the case cited by Reckitt, where there was only a bare allegation that "there was simply no way a valid test would show" results supporting an advertising claim was insufficient to satisfy Rule 9(b). *Dyson, Inc. v. Garry Vacuum, LLC*, No. CV 10-01626 MMM, 2011 U.S. Dist. LEXIS 165514, at *5 (N.D. Cal. Jan. 4, 2011).

     e.    <u>"No Scrubbing" Advertisements for Lysol Power Toilet Bowl Cleaner</u>

Clorox sufficiently pleads that the television commercials comparing Lysol Power Toilet Bowl Cleaner and Clorox Regular Liquid Bleach are false for three reasons. Compl. ¶ 97.

First, Clorox alleges that Reckitt's comparison is "mismatched . . . to support the false claim that Lysol Power Toilet Bowl Cleaner enjoys an unqualified performance advantage over a comparable Clorox product." Opp. at 9; Compl. ¶¶ 97, 99. Clorox alleges there is a difference between the formulation and purpose of the two products. Acid-based cleaners, such as Lysol Power Toilet Bowl Cleaner, are more effective against mineral-based deposits (like rust and limescale), whereas Clorox's bleach-based Clorox Toilet Bowl Cleaner is more effective at removing organic stains (like mildew and mold). Compl. ¶ 103. Both Clorox and Lysol offer products in both categories that are more apt for direct comparisons—Clorox markets Clorox

16

United States District Court
Northern District of California

1  Toilet Bowl Cleaner–Tough Stain Remover, which is intended to be used to clean limescale and

2  rust. *Id.* Because acid-based and bleach-based cleaners have different efficacy depending on the

3  type of deposits on surfaces, Reckitt's undifferentiated claim of the Lysol product's superiority in

4  cleaning limescale stains is misleading and thus is sufficient to claim literal falsity by implication.

5  *See Groupe SEB*, 774 F.3d at 202; *Doctor's Assocs.*, 2010 U.S. Dist. LEXIS 14687, at *47–48.

6  The advertisement omits an explanation of the material differences between the two products.

7  Instead, the ad focuses on the two products without revealing their incomparability.

8      Reckitt again cites EPA approval to argue comparability. Specifically, the EPA approved

9  Clorox Toilet Bowl Cleaner for use on mineral-based deposits, just like Lysol Power Toilet Bowl

10  Cleaner, so the comparisons are not mismatched. But this response does not defeat Clorox's

11  statement of a plausible claim.

12      Reckitt also contends that its advertisement includes a "disclaimer expressly stat[ing] that

13  the purported advantage relates only to rust and limescale and not to organic matter." Mot. at 13.

14  Reckitt cites *Cannarella v. Volvo Car United State LLC*, which held that "other statements in [an

15  advertisement can] dispel … alleged misrepresentations." No. CV 16-6195-RSWL-JEMx, 2016

16  U.S. Dist. LEXIS 192449, at *21 (C.D. Cal. Dec. 12, 2016). But such statements may not be

17  effective if they are hidden. *See, e.g.*, *23andMe, Inc.*, 356 F. Supp. 3d at 909 (a footnote that was

18  "essentially buried" could not cure a deceptive advertisement). Clorox states that the disclaimers

19  related to the "No Scrubbing" toilet bowl cleaner advertisements are "nearly illegible" and

20  "minuscule." Compl. ¶¶ 99, 100, 102. Considering these facts in the light most favorable to

21  Clorox, the disclaimers cannot be found to cure the misleading nature of the advertisement as a

22  matter of law.[5]

23      Second, Clorox claims that this advertisement is misleading because it represents

24  "[t]hrough its depiction of a woman using a single squirt of the product to render her toilet

25

26  _____

27  [5] This same analysis applies to the commercial Clorox alleges that contains a voiceover stating, "Clorox Toilet Bowl Cleaner with Bleach is no match against limescale," with a "minuscule" disclaimer stating that the results involve Lysol Power Toilet Bowl Cleaner and Clorox Toilet

28  Bowl Cleaner Clinging Bleach Gel, which is distinct from the Clorox Toilet Bowl Cleaner with Bleach product referenced in the voice-over. Compl. ¶¶ 99, 100.

United States District Court
Northern District of California

immaculate, . . . that the Lysol product works instantly to removal all deposits from toilets." Compl. ¶ 107.  The "ad egregiously misrepresents the efficacy of Lysol Power Toilet Bowl Cleaner" because "the product requires at least *10 minutes* to remove *some* toilet bowl stains."  *Id.* Clorox claims that in fact, Lysol Power Toilet Bowl Cleaner is deficient in terms of removing organic deposits, so it "cannot render toilets immaculate in seconds, as depicted in Reckitt's advertising."  Compl. ¶ 94.  These facts are sufficient to support a plausible claim that the advertisement's portrayal of the immediate cleaning effect would be misleading to consumers.

Third, Clorox contends that the claim "10X more cleaning power than Clorox" is literally false because Lysol products generally do not have a performance advantage over Clorox.  In fact, when comparing the Lysol Power Toilet Bowl Cleaner to Clorox Toilet Bowl Cleaner–Tough Stain Remover, the Lysol product does not have an advantage in removing limescale and rust because they contain the same active ingredient, glycolic acid.  Compl. ¶ 103.  The Lysol product does not have 10x more cleaning power than Clorox's comparable product.  There is thus a factual basis for Clorox's claim that the advertisement is false.

Clorox also claims that the statement "10X More Cleaning Power than Bleach," which appears on various in-store displays and on product packaging, is literally false or has the tendency to mislead consumers.  *See* Compl. ¶¶ 101–02; *id.*, Exh. 8.  The advertisement Clorox references is an in-store display that proclaims "10X More Cleaning Power than Bleach" and features a picture of a Lysol product containing a label that says "10X Cleaning Power."  *Id.*, Exh. 8.  Construing the facts in Clorox's favor, it can be plausibly inferred that these two statements are misleading because a reasonable consumer would likely believe that the comparison is in fact with its leading competitor, Clorox.  Clorox and Lysol are top competitors in the cleaning products market.  *See* Compl. ¶¶ 2, 15 (alleging that Clorox and Lysol "for decades . . . have competed in the U.S. market for household cleaning products," are the "top two brands, measured by sales revenue, in the U.S. market for household cleaning products," and "compete vigorously for sales and share of this expansive market").  Many consumers may well associate "bleach" with Clorox. Furthermore, viewed contextually, Reckitt has produced numerous advertisements explicitly comparing Lysol product to Clorox products.  Accordingly, a consumer could reasonably

1    understand any comparative statement on a Lysol product to be relative to Clorox.  Thus, Clorox's

2    claims regarding the "10X Cleaning Power" statements meet the requirements of Rule 9(b).

3                    f.     <u>Non-Comparative Advertisements</u>

4           Clorox challenges an online advertisement that shows a boy sneezing at a table and then

5    the Lysol Disinfecting Spray with the words, "Kills over 100 illnesses causing germs."  Compl. ¶¶

6    78–79.  The next screen depicts Lysol Disinfecting Spray alongside Lysol Disinfecting Wipes.  *Id.*

7    ¶ 80.  Clorox alleges that this advertisement "sends the clear message that *both* products 'kill over

8    100 illness causing germs,'" when in fact only the Lysol Disinfecting Spray has that capability.

9    Opp. at 19 (emphasis added); Compl. ¶ 82.

10          This advertisement is not sufficiently unambiguous as to be false because it is unclear

11   whether the advertisement is referring to *both* products as able to kill over 100 illness-causing

12   germs, or whether they can do so *together*.  However, Clorox also alleges that the advertisement

13   has the tendency to mislead consumers.  Compl. ¶ 82.  Clorox states that consumers "would likely

14   not realize that the . . . claim is true only to Lysol Disinfecting Spray."  *Id.*  It is plausible that

15   where an advertisement trumpets that a Lysol product "Kills over 100 illnesses causing germs"

16   and then immediately afterwards displays two Lysol products, a consumer could be misled into

17   believing that the claim is true for both products.

18          Clorox also claims that the non-comparative advertisement showing actors spraying and

19   immediately wiping surfaces clean and an announcer stating that Lysol Daily Cleanser kills

20   "99.9% of germs" is false.  Compl. ¶ 57.  Clorox claims that the advertisement erroneously

21   portrays that Lysol Daily Cleanser works by spraying and immediately wiping the surface,

22   whereas the EPA-approved use instructions on the label requires ten minutes of contact with a

23   treated surface to achieve its disinfectant effect.  Compl. ¶ 58.  These allegations are sufficient to

24   state a claim that the advertisement is misleading.  Clorox also claims that the advertisement's

25   "erroneous portrayal of Lysol Daily cleanser's approved use instructions and disinfecting efficacy

26   reinforces the false messaging of Reckitt's comparative advertising: that Lysol Daily Cleanser is

27   comparable to CCU but has 'safer' and 'simpler' ingredients."  Compl. ¶ 59.  However, this

28   allegation does not state a plausible claim because there is no express or implicit comparison to a

Clorox product.

In sum, Clorox has plausibly alleged falsity, either under a literally false theory or "likely to mislead" theory, with respect to all of the advertisements in the complaint.

2.      Materiality

A false advertising claim must be material in that it is "likely to influence the purchasing decision" of consumers.[6]  *Southland Sod Farms*, 108 F.3d at 1139.  Materiality "is 'typically' proven through consumer surveys," which provide direct evidence of a statement's impact. *Skydive Arizona*, 673 F.3d at 1110 (quoting *Southland Sod Farms*, 108 F.3d at 1140).  A plaintiff can also establish materiality by showing that "the defendants misrepresented an inherent quality or characteristic of the product." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002) (citation omitted); *see, e.g.*, *see In-N-Out Burgers v. Smashburger Ip Holder LLC*, No. SACV 17-1474(DFMx), 2019 Dist. LEXIS 62743, at *22 (C.D. Cal. Feb. 6, 2019) (finding an advertising claim material "because the amount of beef in a burger is an inherent quality or characteristic of a burger"); *Quidel Corp. v. Siemens Med. Solutions USA, Inc.*, No. 16-3059-BTM-AGS, 2017 U.S. Dist. LEXIS 171757, at *10 (S.D. Cal. Oct. 16, 2017) (ruling that an advertisement representing defendant's product as being more effective and less expensive than plaintiff's would be material to consumers' purchasing decisions).

Here, Clorox plausibly argues that Reckitt's advertisements attack Clorox products' efficacy, safety, and durability. *See* Compl. ¶ 110 ("[T]he challenged advertising sows doubts in consumers' minds about the efficacy and safety of Clorox products as household cleaning and disinfecting agents.").  Some, like the "Game Over" and "Spray Away" commercials, cast doubt on the efficacy of Clorox products in killing germs, a primary purpose of cleaning products.  *See* Compl. ¶ 72.  Others, like the "Bleach Indicator Test" advertisement, insinuate that Clorox products are unsafe.  *Id.* ¶ 46.  Finally, the "Strength Test" commercial suggests that Clorox wipes

---

[6] Historically, courts have presumed materiality for literally false statements.  *See William H. Morris*, 66 F.3d at 258.  Now, however, "a majority of circuits, including the Ninth Circuit, require a separate showing of materiality for literally false statements." *LivePerson, Inc. v. [24]7.ai, Inc.*, No. 17-cv-01268 JST, 2018 U.S. Dist. LEXIS 190918, at *16 (N.D. Cal. Oct. 26, 2018) (citing *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1111 (9th Cir. 2012); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002)).

United States District Court
Northern District of California

1    tend to rip during use.  *Id.* ¶ 90.  These all implicate inherent qualities and characteristics of

2    cleaning products, and would likely influence the purchasing decision of a consumer.

3    Accordingly, Clorox's complaint sufficiently establishes materiality.

4            3.      Injury Caused by False Statements

5            Under the Lanham Act, the plaintiff must "plead (and ultimately prove) an injury to a

6    commercial interest in sales or business reputation proximately caused by the defendant's

7    misrepresentations."  *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-cv-00253-WHO,

8    2016 U.S. Dist. LEXIS 150713, at *13 (N.D. Cal. Oct. 28, 2016) (*citing Lexmark Int'l, Inc. v.*

9    *Static Control Components, Inc.*, 134 U.S. 1377, 1395 (2014)).  Lost sales for the plaintiff because

10   of the defendant's false advertising is the "paradigmatic direct injury from false advertising."  *Id.*

11   at *15 (quoting *Lexmark Int'l*, 134 U.S. at 1393).

12           Clorox has adequately alleged injury caused by Reckitt's advertising.  Clorox claims that

13   as a result of the advertisements, it has suffered direct diversion of sales and lost profits on those

14   sales that it would have otherwise earned.  Compl. ¶ 111.  Clorox also claims that the

15   advertisements have damaged its goodwill, reputation, and standing with the consuming public.

16   *Id.* ¶¶ 110–11.  Such allegations are sufficient to plead damages.  *See Openwave Messaging, Inc.*,

17   2016 U.S. Dist. LEXIS 150713, at *15 (allegations that defendant's false advertisement caused

18   "potential customers to mistakenly turn to [defendant] when seeking [plaintiff's] products and

19   services, and the sales or inquiries of [defendant's] products resulting from this false advertising

20   should rightly have gone to [plaintiff]" were sufficient to establish proximate cause and injury for

21   the purposes of a motion to dismiss); *Luxul Tech., Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156,

22   1169 (N.D. Cal. 2015) (allegations that defendant's "misrepresentations regarding the source of

23   LED tube lamps resulted in harm to distinctiveness of Plaintiff's product, brand, good, and

24   reputation," and the "likelihood of commercial injury based on Defendants' misbranding of Luxul

25   products" was sufficient to show injury).

26           Reckitt asserts that Clorox's claims fail because it "failed to allege that it has in fact been

27   injured," and "offers only conclusory allegations" without "alleg[ing] as to how any specific ad

28   has caused [Clorox] any identifiable harm.  Reply at 11; Mot. at 16.  But neither case Reckitt cites

United States District Court
Northern District of California

21

in support of its argument is persuasive.  First, in *Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club*, 407 F.3d 1027 (9th Cir. 2005), the Ninth Circuit affirmed the dismissal of a Lanham Act claim where the plaintiff was not a competitor of the defendant, and therefore could not show that it suffered a competitive injury due to the defendant's advertising.  *Id.* at 1037.  Clorox is a competitor of Reckitt, so *Jack Russell* is inapposite.  Second, in *Vincent v. Utah Plastic Surgery Soc.*, 621 F. App'x 546 (10th Cir. 2015), the Tenth Circuit required the plaintiff to make some showing of "how much Plaintiff's profits have decreased since Defendants began their advertising campaign," to "quantif[y] or estimate the decreased in goodwill," or to "quantify the number of potential customers who allegedly have been lost because of Defendant's statements."  *Id.* at 550–51.  But as the *Openwave Messaging* and *Luxul Technology* cases cited above reflect, courts within the Ninth Circuit have been more lenient regarding the factual showing required to establish injury at the motion to dismiss stage.

       4.    Conclusion

Clorox has adequately alleged each element of its Lanham Act claim.  Accordingly, Reckitt's motion to dismiss the Lanham Act claim is **DENIED**.

C.    UCL and FAL

Clorox alleges that Reckitt engaged in unfair competition, "including unlawful, unfair, deceptive and fraudulent business acts or practices, in violation of the [UCL]" and "engaged in false advertising in violation of the [FAL]" based on the same advertisements challenged under the Lanham Act.  Compl. ¶¶ 120, 124–25, 129.  The UCL prohibits an "unlawful, unfair[,] or fraudulent business act or practice and unfair, deceptive, untrue[,] or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  Here, Clorox alleges both unlawful and unfair business practices premised on Reckitt's misrepresentations.  *See, e.g.*, Compl. ¶¶ 120–24.  An "unlawful" practice under the UCL is "anything that can properly be called a business practice and that at the same time is forbidden by law."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted).  The "unfair" prong of the UCL "prohibit[s] not only advertising which is false, but also advertising which[,] although is true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."

United States District Court<br>Northern District of California

1   *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1173 (2018) (citation omitted).  The FAL prohibits

2   "untrue or misleading" advertising "which is known, or which by the exercise of reasonable care,

3   would be known to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

4     Reckitt contends the UCL and FAL claims should be dismissed because Clorox has failed

5   to establish standing to bring them and further has not adequately alleged that the advertisements

6   are likely to deceive a reasonable consumer.

7     1. <u>Standing</u>

8     Reckitt contends that Clorox must "allege its <u>own</u> reliance on any alleged statements by

9   Reckitt" to assert claims under the UCL and FAL, and cannot "establish that it has standing based

10   upon its customers' reliance upon the ads in question."  Mot. at 18.  Reckitt is correct as to the

11   FAL claim and the UCL unlawful prong claim, but not the UCL unfair prong claim.

12     A claim under the FAL must demonstrate that "the plaintiff suffered an injury due to his or

13   her own actual and reasonable reliance on the purported misleading statements."  *Rosado v. eBay,*

14   *Inc.,* 53 F. Supp. 3d 1256, 1266 (N.D. Cal. 2014) (citing *Kwikset Corp. v. Superior Court*, 51 Cal.

15   4th 310, 326 n.9 (2011)).  Similarly, most courts, including this one, have determined that where

16   UCL claims are predicated on fraud and based on *unlawful* acts or practices, the plaintiff must

17   demonstrate actual reliance on the misleading advertisements.  *See 23andMe*, 356 F. Supp. 3d at

18   910–11.  Clorox does not allege that it ever actually relied on Reckitt's false advertisements to its

19   detriment, and accordingly has no standing to pursue its FAL and UCL unlawful prong claims.

20     In contrast, where the UCL claim argues *unfair* acts or practices, a plaintiff need not

21   demonstrate that he or she was deceived by the alleged misrepresentation.  *Id.* at 911.  Courts

22   reason that a defendant's unfair business practices can threaten or harm competition even without

23   deceiving competitors.  *See id.* (citing *Cel-Tech*, 20 Cal. 4th at 186–87; *In re Tobacco II Cases*, 46

24   Cal. 4th 298, 325 n.17 (2009)).  Although some cases have held to the contrary, as noted in

25   Reckitt's brief, this Court has respectful disagreed with that analysis in past.  *Id.* (finding that

26   demonstration of actual reliance is necessary for FAL and UCL unlawful claims, but not for UCL

27   unfair claims, while acknowledging that "there are some cases that arguably hold contrary").

28   Therefore, Clorox's failure to allege its own reliance on the challenged advertisements militates

United States District Court
Northern District of California

1  the dismissal of its unlawful prong claim, but its unfair prong claim is unaffected.

2          2.        Likelihood to Deceive

3          Additionally, in order to state a false advertising claim under the UCL, a plaintiff must

4  demonstrate that the advertisement is "either actually misleading or which has a capacity,

5  likelihood or tendency to deceive or confuse the public," and "likely to deceive a reasonable

6  consumer." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1092 (N.D. Cal. 2017) (internal

7  quotations omitted); *see also In re Tobacco II Cases*, 46 Cal. 4th at 312.

8          Reckitt asserts that Clorox must prove that "a significant proportion of the general

9  consuming public or of targeted consumers, acting reasonably in the circumstances, could be

10  misled" by the challenged advertisements. Mot. at 19 (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958,

11  965 (9th Cir. 2016)). Reckitt is correct to the extent that it is describing Clorox's ultimate burden

12  of proof at trial. However, courts have emphasized that the reasonable consumer analysis is

13  "usually . . . a question of fact not appropriate for decision on" a motion to dismiss. *Williams v.*

14  *Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Thus, "[g]ranting a motion to dismiss is

15  appropriate only in 'the rare situation' where 'the advertisement itself [makes] it impossible for the

16  plaintiff to prove that a reasonable consumer was likely to be deceived,'" *Coe v. Gen. Mills, Inc.*,

17  No. 15-CV-05112-TEH, 2016 WL 4208287, at *5 (N.D. Cal. Aug. 10, 2016) (quoting *Williams*,

18  552 F.3d at 939), or, similarly, where "no reasonable consumer" would be misled by the

19  advertisement, *Williams*, 552 F.3d at 939. *See, e.g.*, *Anthony v. Pharmavite*, No. 18-cv-02636-

20  EMC, 2019 U.S. LEXIS 1899, at *9 (N.D. Cal. Jan. 4, 2019) (confirming that in order to grant a

21  motion to dismiss, the court must "conclude as a matter of law that no reasonable consumer would

22  be misled by the labeling").

23          As discussed above, Clorox has plausibly explained how Reckitt's advertisements could be

24  misleading to consumers under the Lanham Act. For the similar reasons, the Court cannot hold as

25  a matter of law that the advertisements cannot possibly mislead a reasonable consumer under the

26  UCL. Accordingly, Reckitt's motion to dismiss the UCL unfair prong claim is denied.

27

28

United States District Court
Northern District of California

1

## IV.   CONCLUSION

2      For the foregoing reasons, Reckitt's motion to dismiss is **GRANTED in part** and

3   **DENIED in part**.  With respect to Clorox's Lanham Act claims, Reckitt's motion to dismiss is

4   **DENIED**.  The motion is **GRANTED** with respect to Clorox's FAL and UCL unlawful prong

5   claims; these claims are **dismissed with prejudice** for lack of standing.

6      This order disposes of Docket No. 44.

7

8      **IT IS SO ORDERED**.

9

10   Dated: July 12, 2019

11

12

13                                              _____
                                                EDWARD M. CHEN
                                                United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28